IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 10-0112

2010 MT 141

_____

DOROTHY LAMB,

      Petitioner,

    v.

DISTRICT COURT OF THE FOURTH JUDICIAL
DISTRICT OF MONTANA, MISSOULA COUNTY,
THE HONORABLE ED McLEAN, Presiding Judge,

      Respondent.

O P I N I O N
A N D
O R D E R

_____

¶1    Before this Court is a Petition for Writ of Supervisory Control (Petition) filed by Dorothy Lamb. Lamb asks this Court to assume supervisory control over the Fourth Judicial District Court, Missoula County, in Cause No. DV-06-38, with respect to the court's order dated December 14, 2009, granting an indefinite stay of proceedings. On March 23, 2010, we issued an order granting Respondent District Court, or its designee, 30 days in which to prepare, file, and serve a response to the Petition. The District Court designated Patrick HagEstad, counsel for defendants in the underlying action (*Lamb v. Montana Hospital Association Workers' Compensation Trust, and Brentwood Services Administrators, Inc.*), to respond to the Petition. A response has now been filed. Having considered the parties' arguments, we grant the Petition, reverse the District Court's order, and remand for further proceedings consistent with this Opinion and Order.

**ISSUES**

1

¶2     We restate the issues as follows:

1. Are the issues presented by Lamb appropriate for resolution by this Court through a writ of supervisory control?

2. Did the District Court err in staying the proceedings on Lamb's bad faith claims due to her discovery requests which sought disclosure of documentation relating to the defendants' handling of her workers' compensation claim?

### BACKGROUND

¶3     In late 2003 or early 2004, Lamb suffered a back injury while working as a nurse's aid. She sought workers' compensation benefits from the Montana Hospital Association Workers' Compensation Trust (MHA), which provided coverage for Lamb's employer. MHA denied liability. Lamb then filed suit in the Workers' Compensation Court (WCC). In February 2005, the parties entered into a Stipulation for Judgment (Stipulation) in which MHA accepted liability for Lamb's occupational disease, agreed to "provide medical benefits, including payment of outstanding medical bills, related to [Lamb's] occupational disease," and also agreed to pay a penalty and Lamb's attorney's fees. The WCC entered judgment on February 14, 2005, adopting the Stipulation and dismissing the case with prejudice.

¶4     Lamb's condition is debilitating and has required multiple surgeries to fuse her vertebrae. MHA has paid for three such surgeries pursuant to the WCC's judgment. Lamb explains that future treatments are inevitable because her condition is degenerative. Thus, since her medical problems are ongoing, future medical benefits are necessary.

¶5 Following the resolution of her claim in the WCC, Lamb filed a bad faith action in the District Court against MHA and against Brentwood Services Administrators, Inc., which had handled her workers' compensation claim on MHA's behalf. This action includes a common law claim, as well as a statutory claim under the Unfair Trade Practices Act (*see* §§ 33-18-201, -242, MCA). Lamb alleges that during the course of adjusting her claim, MHA and Brentwood (collectively, Defendants) wrongfully delayed, failed, and refused repeated requests to pay benefits that were due and payable under the Workers' Compensation Act. Lamb asserts that the nature of Defendants' conduct is demonstrated in part by the fact that MHA ultimately conceded in the Stipulation that it should pay a penalty and attorney's fees in resolving Lamb's workers' compensation claim. In this regard, Lamb notes that attorney's fees are recoverable only if the insurer's actions in denying liability were unreasonable. *See* § 39-71-611(1)(c), MCA. She maintains, however, that this limited measure of recourse does not compensate her for the damages she suffered for over a year while Defendants remained intransigent, which is why she is now pursuing the present bad faith action.

¶6 Lamb sought discovery of the documents which Defendants had relied upon and generated in handling her workers' compensation claim, including claims-handling manuals, employee training materials, and investigative reports. She also sought Defendants' correspondence with counsel, since Defendants had asserted the "advice of counsel" defense. *See Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 110, 861 P.2d 895, 907 (1993) (the attorney-client privilege does not apply if the insurer directly relies on advice of counsel as a defense to a bad faith charge).

3

¶7 Defendants requested a stay of proceedings until Lamb's underlying workers' compensation claim is "fully resolved." They asserted that Lamb had entered into only a "partial settlement" of that claim, and they pointed out that she is still seeking benefits related to her back injury. Defendants argued that they would be prejudiced by having to defend both the underlying claim and Lamb's bad faith claim. They further argued that providing discovery of Brentwood's file and proprietary claims-handling procedures, as well as the attorney file advising Brentwood in the negotiations with Lamb's counsel, would enable Lamb "to use this information to unfairly leverage her position" in obtaining future medical benefits under the WCC's judgment.

¶8 The District Court recognized Lamb's right and obligation to file her bad faith claims for statute of limitations purposes, but the court stated that it must balance her right to proceed on these claims with Defendants' rights not to be prejudiced in resolving her ongoing workers' compensation claim. The court opined that "[m]uch of the discovery Lamb seeks in this action would be privileged in the underlying workers' compensation claim" and that "[i]f discovery were allowed, Lamb would be able to improperly use the privileged information discovered in this case in the underlying case, including how claims are negotiated, reserved, and settled, thereby resulting in prejudice to Defendants." The court concluded that Lamb's workers' compensation claim had not yet reached "a point where proceeding in [the bad faith] case will not prejudice Defendants in resolving the underlying claim." On the other hand, the court noted that Defendants are on notice to preserve all relevant information as a result of this litigation. Thus, the court ruled that "the relative prejudice [to Defendants] in proceeding at this

4

time outweighs any potential prejudice that Lamb may experience as a result of the stay." The court therefore ordered that "[a]ll proceedings in the [bad faith] case are hereby stayed until Lamb's underlying workers' compensation claims reach a point where proceeding in this case will not prejudice Defendants in resolving the underlying claim."

**DISCUSSION**

¶9    ***Issue 1. Are the issues presented by Lamb appropriate for resolution by this Court through a writ of supervisory control?***

¶10    This Court has general supervisory control over all other courts and may supervise another court by way of a writ of supervisory control. *See* Mont. Const. art. VII, § 2(2); M. R. App. P. 14(3). Supervisory control is considered "an extraordinary remedy." *Miller v. Eighteenth Judicial Dist. Court*, 2007 MT 149, ¶ 16, 337 Mont. 488, 162 P.3d 121; M. R. App. P. 14(3). Thus, we exercise supervisory control on a case-by-case basis and only (1) when urgency or emergency factors exist making the normal appeal process inadequate, (2) when the case involves purely legal questions, and (3) when one or more of the following circumstances exist: (a) the other court is proceeding under a mistake of law and is causing a gross injustice, (b) constitutional issues of state-wide importance are involved, or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. *State v. Thirteenth Judicial Dist. Court*, 2009 MT 163, ¶ 13, 350 Mont. 465, 208 P.3d 408; M. R. App. P. 14(3).

¶11    We conclude that this case is appropriate for the exercise of supervisory control under the foregoing factors. First, it should be noted that a stay order is not an appealable order. *See* M. R. App. P. 6(3) (listing the orders appealable in civil cases). Furthermore,

the stay imposed by the District Court is of an indeterminate duration in that it lasts "until Lamb's underlying workers' compensation claims reach a point where proceeding in this case will not prejudice Defendants in resolving the underlying claim." Lamb's claims for medical benefits, however, are ongoing and will likely extend the duration of her lifetime due to the degenerative nature of her condition. Thus, as Lamb points out, because the District Court's rationale for staying the proceedings is based on her ongoing receipt of medical benefits, and because she will continue to receive those benefits for her lifetime, the stay will apparently last for her lifetime. It is effectively permanent and tantamount to an injunction prohibiting Lamb from ever pursuing her bad faith action as long as she receives medical benefits related to her underlying injury. At the very least, her bad faith action could likely be stale by the time the stay is lifted. Moreover, the stay halts "all" proceedings, meaning that Lamb cannot develop her bad faith action through discovery, cannot file motions to begin shaping the issues for trial, and cannot take any other steps toward resolution. *Cf. State ex rel. Burlington N. R.R. v. Eighth Judicial Dist. Court*, 239 Mont. 207, 211-12, 779 P.2d 885, 888-89 (1989) (although this Court has "expressed disfavor in granting a writ in the context of a discovery issue," supervisory control is appropriate if the petitioner has been placed "at a significant disadvantage in litigating the merits of the case").

¶12 Under these circumstances, we agree that urgency or emergency factors exist making the normal appeal process inadequate—if not totally unavailable as a practical matter. In addition, the issue raised by Lamb involves a purely legal question, and Lamb has demonstrated that the District Court is proceeding under a mistake of law, as

6

explained under Issue 2, and is causing a gross injustice, for the reasons just discussed. We accordingly exercise supervisory control over this case to consider the issue raised in Lamb's Petition.

¶13     ***Issue 2. Did the District Court err in staying the proceedings on Lamb's bad faith claims due to her discovery requests which sought disclosure of documentation relating to the defendants' handling of her workers' compensation claim?***

¶14     Ordinarily, we review district court orders related to trial administration matters, such as a motion to stay, for abuse of discretion. *Wamsley v. Nodak Mut. Ins. Co.*, 2008 MT 56, ¶ 23, 341 Mont. 467, 178 P.3d 102. However, judicial discretion must be guided by the rules and principals of law; thus, our standard of review is plenary to the extent a discretionary ruling is based upon a conclusion of law. *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 17, 351 Mont. 464, 215 P.3d 649.

¶15     As an initial matter, Lamb contends that her underlying workers' compensation claim is "fully resolved," insofar as her present bad faith action is concerned, and that the District Court's contrary view is erroneous. In this regard, she cites our decision in *O'Connor v. Natl. Union Fire Ins. Co.*, 2004 MT 65, 320 Mont. 301, 87 P.3d 454, where we addressed the question of whether statutory and common law bad faith claims against an insurer, predicated on actions taken in the adjustment of a workers' compensation claim, accrue when the WCC enters a judgment which orders the insurer to pay for a previously denied benefit, but which leaves unresolved the ultimate determinations of the extent and duration of the worker's disability. We answered this question in the affirmative. *See O'Connor*, ¶¶ 2, 28. In so doing, we reviewed our decisions in *Grenz v.*

7

*Orion Group*, 243 Mont. 486, 795 P.2d 444 (1990), *Poteat v. St. Paul Mercury Ins. Co.*, 277 Mont. 117, 918 P.2d 677 (1996), and *Brewington v. Employers Fire Ins. Co.*, 1999 MT 312, 297 Mont. 243, 992 P.2d 237, and noted that in each of these cases, we resolved the issue of when the bad faith claim accrued by examining the particular dispute at issue in the underlying workers' compensation case which gave rise to the allegations of bad faith conduct, and determining when that dispute was resolved. *See O'Connor*, ¶¶ 14-22. In other words, "we determine the accrual date of a bad faith claim arising out of a separate and independent disputed issue by determining whether that particular issue has been ultimately resolved, regardless of the existence or absence of a resolution of other issues within the workers' compensation case." *O'Connor*, ¶ 22.

¶16    Here, the particular dispute at issue in the underlying workers' compensation case, which gave rise to the allegations of bad faith conduct in the present case, was whether MHA was liable for Lamb's occupational disease. That dispute was fully resolved in Lamb's favor when the WCC entered its judgment on February 14, 2005, adopting the Stipulation. And it is clear, therefore, that Lamb's bad faith cause of action accrued on that date, even though the WCC's judgment ordering MHA to pay for previously denied benefits left unresolved the ultimate determinations of the extent and duration of those benefits. *O'Connor*, ¶ 28. Lamb then timely filed her complaint in the present action on January 17, 2006.

¶17    Defendants' assertions that Lamb's underlying workers' compensation claim is "still unresolved," that there was only a "partial settlement" of the claim, and that they must still "defend the underlying claim" are misleading and contrary to our decision in

8

*O'Connor*. Although the WCC's judgment did not adjudicate Lamb's entitlement to specific future medical treatments, it did resolve the dispute over MHA's liability for her occupational disease, which is the basis of her bad faith action. Also, Lamb readily acknowledges that other disputes concerning her workers' compensation claim may arise in the future. For example, MHA may dispute whether particular treatments are necessary or related to Lamb's on-the-job injury. Yet, such disputes would not alter the previous determination by the WCC that MHA is liable for her medical condition. If disputes over specific treatments ever materialize, those will have to be addressed by the WCC in the first instance. But the particular dispute upon which her bad faith action is premised—MHA's liability for her occupational disease—remains fully resolved. Likewise, the alleged bad faith conduct leading up to the WCC's judgment—Defendants' refusal to admit liability, their prolonged denial of liability, their failure to pay benefits that were due and payable under the Workers' Compensation Act, and their failure to conduct a reasonable investigation—is likewise complete.

¶18 The crux of the matter, then, is not whether Lamb's bad faith action has accrued (it has) or whether she may discover the documents she requested for purposes of pursuing that action (she may). Rather, it is whether she may be indefinitely precluded from doing so on the basis of the prejudice claimed by Defendants. As they did in the District Court, Defendants again argue in this Court that providing the requested discovery at this time would allow "improper leveraging" and "undue prejudice." Indeed, they claim it would be a "gross injustice" to require them to provide the discovery while "disputes" are ongoing in the underlying workers' compensation claim. Defendants cite *Fode v.*

9

*Farmers Ins. Exch.*, 221 Mont. 282, 287, 719 P.2d 414, 417 (1986), for the proposition that there are "difficulties" in defending a bad faith case while simultaneously defending claims in the underlying case.

¶19 We rejected similar reliance on *Fode* in *O'Connor*. *See O'Connor*, ¶¶ 23-25. But more importantly, there is a fallacy underlying Defendants' position—namely, that there is no discrete break-point between Lamb's bad faith claims and her ongoing (and indeed lifetime) claims for medical benefits. As explained above, Lamb's bad faith claims have to do with Defendants' handling of her workers' compensation claim prior to the stipulated final judgment entered by the WCC, in which MHA conceded liability and agreed to pay a penalty and Lamb's attorney's fees. Lamb is fully entitled to pursue discovery of *those* practices and is entitled to the insurer's and administrator's files with respect to *those* claims. *See* M. R. Civ. P. 26(b)(1); *cf. Peterson v. Doctors' Co.*, 2007 MT 264, ¶¶ 40-46, 339 Mont. 354, 170 P.3d 459. She should not be put in the position of having to relinquish her right to ongoing medical benefits under the WCC's judgment in order to obtain discovery in her bad faith action regarding Defendants' conduct surrounding the now-resolved issue of liability. Certainly, Defendants are entitled to open new files pertaining to Lamb's ongoing medical treatment and pertaining to her bad faith action. She is not entitled to discovery of those files. But that is not what she is seeking in discovery here. She seeks discovery of the original claims-handling files only, and she is undisputedly entitled to discovery of those files in order to prove her bad faith claims. Finally, to the extent Defendants believe that some portion of, or document in, the claims-handling file is not discoverable, Defendants may file a *specific* objection and

10

motion for a protective order, and the District Court can then resolve that objection following an in-camera review.

## CONCLUSION

¶20     The District Court has effectively, and erroneously, conflated Lamb's request for discovery of Defendants' claims-handling practices and the files pertaining to those—to which she is entitled—with discovery of Defendants' new files regarding Lamb's ongoing treatment and bad faith suit. As regards these latter files, Lamb is not entitled to discovery of those and, indeed, has not requested discovery of them, in any event. The District Court's indeterminate stay of all proceedings, without recognizing the different files and the break-point occasioned by entry of the WCC's judgment adopting the Stipulation, has effectively put Lamb's bad faith action on hold forever.

¶21     Accordingly, based on the foregoing,

¶22     IT IS ORDERED that the Petition for Writ of Supervisory Control is GRANTED.

¶23     IT IS FURTHER ORDERED that the District Court's December 14, 2009 Order Granting Stay of Proceedings in cause number DV-06-38 granting an indefinite stay of proceedings is reversed.

IT IS FURTHER ORDERED that this case is remanded to the District Court for further proceedings consistent with this Opinion and Order.

The Clerk of this Court is directed to give notice of this Opinion and Order to counsel of record and to the Hon. Ed McLean, District Court Judge, presiding.

Dated this 23rd day of June, 2010.

/S/ JAMES C. NELSON


We concur:

/S/ MIKE McGRATH

/S/ JIM RICE

/S/ MICHAEL E WHEAT

/S/ BRIAN MORRIS