FILED

July 29 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0567

DA 14-0567

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 217

IN RE THE CROW WATER COMPACT,

IN THE MATTER OF THE ADJUDICATION
OF EXISTING AND RESERVED RIGHTS
TO THE USE OF WATER, BOTH SURFACE
AND UNDERGROUND, OF THE CROW
TRIBE OF INDIANS OF THE STATE OF
MONTANA.

APPEAL FROM:     Montana Water Court, Cause No. WC-2012-06
                      Honorable Russ McElyea, Chief Water Judge

COUNSEL OF RECORD:

       For Appellants:

             Hertha L. Lund, Breeann M. Johnson, Lund Law, PLLC,
             Bozeman, Montana

             Elizabeth A. Brennan, Brennan Law & Mediation, PLLC,
             Missoula, Montana

       For Appellee United States:

             John C. Cruden, Assistant Attorney General, John L. Smeltzer, Appellate
             Attorney, United States Department of Justice, Washington, DC

       For Appellee Crow Tribe:

             Nathan A. Espeland, Espeland Law Office, PLLC, Columbus, Montana

             Merrill C. Godfrey, Akin Gump Strauss Hauer & Feld, LLP,
             Washington, DC

       For Appellee State of Montana:

             Timothy C. Fox, Montana Attorney General, Jeremiah D. Weiner,
             Assistant Attorney General, Helena, Montana

Submitted on Briefs:  June 10, 2015
Decided:  July 29, 2015

Filed:

_____
                        Clerk

2

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Members of the Crow Allottees Association appeal from the Montana Water Court's order of July 30, 2014, dismissing their objections to the Crow Water Compact and refusing to stay proceedings.  We affirm.

## ISSUES

¶2      *Issue One:  Whether the Water Court applied the proper legal standard of review in granting the motions to dismiss the Allottees' objections.*

¶3      *Issue Two:  Whether the Water Court exceeded its jurisdiction by dismissing the Allottees' objections rather than staying consideration of the Compact pending resolution of the Allottees' action in United States District Court.*

¶4      *Issue Three:  Whether the Water Court erred in determining that the Allottees do not have individual water rights apart from the Crow Tribal Water Right; that the United States adequately represented the Allottees during the Compact negotiations; and whether a "current use list" is a prerequisite for including the Compact in a final decree.*

## BACKGROUND

¶5      This case arises from the Crow Compact, an agreement among the United States, the Crow Tribe, and the State of Montana.  The Compact recognizes and specifies a Tribal Water Right of the Crow Tribe and its members in a number of sources of water that abut or cross the Crow Indian Reservation in Montana.  The Compact also provides for cash payments to the Tribe, allocates coal tax revenue, and creates a tribal administrative structure for distribution of the Tribal Water Right.  The Crow Tribe, the United States through the Department of the Interior, and the Montana Reserved Water Rights Compact Commission agreed to the terms of the Compact in 1999, and the

3

Montana Legislature ratified it the same year. The Compact is codified at § 85-20-901, MCA. The Crow Tribe ratified the Compact by vote of its members in 2011.

¶6 The United States Congress "authorized, ratified and confirmed" the Compact in the Crow Tribe Water Rights Settlement Act of 2010 ("Act"), Pub. L. 111-291, § 404(a)(1). The Settlement Act provides that the Tribal Water Right established by the Compact "shall be held in trust by the United States for the use and benefit of the Tribe and the allottees" and that the right "shall not be subject to forfeiture or abandonment." Act, § 407(c). The Crow Tribe on behalf of itself and its members, and the United States as trustee for the Allottees, waived and released all other claims to water in return for those recognized in the Compact. Act, § 410(a). The Compact contains a similar provision. Section 85-20-901, MCA, Art. VII, Sec. C. The Compact is a negotiated compromise among the parties, in lieu of settling the water claims of the Crow Tribe and its members in protracted, expensive and uncertain litigation.

¶7 The Settlement Act expresses the "intent of Congress to provide to each allottee benefits that are *equivalent to or exceed the benefits allottees possess as of the date of enactment of the Act . . . .*" Act, § 407(a) (emphasis added). The Act provides that "allottees shall be entitled to a just and equitable allocation of water for irrigation purposes" that "shall be satisfied from the tribal water rights." Act, § 407(d). After exhausting relief provided under tribal law, Allottees with claims relating to water may seek relief under 25 U.S.C. § 381 (authorizing the Secretary of the Interior to secure a just and equal distribution of water) or any other applicable law. Act, § 407(d).

4

¶8    The Compact requires that the Montana Water Court a enter a final decree incorporating the Tribal Water Right as set out in the Compact:

> The water rights and other rights confirmed to the Tribe in this Compact are in full and final satisfaction of the water right claims of the Tribe and the United States on behalf of the Tribe and its members, including federal reserved water rights claims based in *Winters v. United States*, 207 U.S. 564 (1908). In consideration of the rights confirmed to the Tribe in this Compact, and of performance by the State of Montana and the United States of all actions required by this Compact, *including entry of a final order issuing the decree of the reserved water right of the Tribe held in trust by the United States as quantified in the Compact* and displayed in Appendix 1, the Tribe and the United States as trustee for the Tribe and Tribal members hereby waive, release, and relinquish any and all claims to water rights or to the use of water within the State of Montana existing on the date this Compact is ratified by the State, the Tribe, and Congress and conditional upon a final decree, whichever date is later.

Section 85-20-901, MCA, Art. VII, Sec. C (emphasis added). The parties to the Compact complied with this provision by submitting it to the Montana Water Court for entry of a judicial decree of the Compact's water rights provisions. Pursuant to § 85-2-702(3), MCA, the Water Court has limited discretion in this process. Montana law provides that the terms of a compact "must be included in a preliminary decree," and unless an objection to a compact is sustained, the decree of the Water Court must include the rights established by the compact "without alteration." Section 85-2-702(3), MCA. The Compact requires that the Water Court's review of the Compact be "limited to Article III and Appendix 1" thereof, which contain the specific water rights agreed to. Section 85-20-901, MCA, Art. VII, Sec. B.3. The Settlement Act contains an automatic repeal if the Secretary of the Interior does not publish a statement of findings by March 31, 2016,

5

which must include a finding that the Montana Water Court has issued a final judgment and decree approving the Compact. Act, § 410(e).

¶9 In 2012 the Water Court entered a preliminary decree containing the terms of the Compact, and served and published notice of the decree and of rights to object. The Water Court sent notice of the preliminary decree to over 16,000 persons and entities and received approximately 100 objections.

¶10 In June 2013 a group of Crow tribal member Allottees objected to the Compact in the Water Court. Allottees are persons who hold interests in allotments, which are parcels of former Tribal land, mostly created by the General Allotment Act of 1887, 25 U.S.C. §§ 331-358. *Big Spring v. Conway*, 2011 MT 109, ¶ 31, 360 Mont. 370, 255 P.3d 121. Among other things, the General Allotment Act aimed to break tribal organization on reservations and replace it with plots of private land farmed by individual Indians who would then be assimilated into the non-tribal culture. While some Allottees hold their land in fee simple, the interests of many others are held in trust by the United States. The Indian Reorganization Act, 25 U.S.C. § 462, ended allotment of reservation lands in 1934 and extended the allotment trust period indefinitely.

¶11 The Allottees made a number of contentions in their Water Court objections to the Compact. Their contentions are centered on the argument that they have reserved water rights appurtenant to their allotments, and that these rights are separate from the reserved rights held by the Tribe as recognized in *Winters v. U.S.*, 207 U.S. 564, 28 S. Ct. 207 (1907). The Allottees' second major contention is that they did not receive adequate notice of the proceedings leading to the Compact and that their interests in the Compact

6

negotiations were not adequately represented by the United States. The contend that their water rights cannot be part of the decree of the Water Court; that their rights will be harmed by implementation of the Compact; and that the Water Court lacks jurisdiction to adjudicate their rights. The Allottees also asked the Water Court to stay its proceedings concerning the Compact pending resolution of a separate lawsuit the Allottees brought in United States District Court in May 2014.

¶12 The Allottees' action, *Crow Allottees Assoc. v. United States*, Cause No. CV-14-62-BLG, United States District Court for the District of Montana, asserts claims that the United States breached its fiduciary duties to the Allottees by failing to protect their water rights in the Compact. The Allottees further contend that the United States violated their due process rights by failing to adequately represent them in Compact proceedings. The complaint seeks a declaratory ruling and order that the United States be required to provide the Allottees with adequate legal counsel in all matters regarding the Compact.

¶13 Upon motion of the Crow Tribe and the United States, the Water Court dismissed the Allottees' objections to the Compact and denied their request for a stay. The Water Court concluded that it had jurisdiction to review the Compact under federal and state law, including the McCarran Amendment, 43 U.S.C. § 666; §§ 85-2-231, -234, and -702, MCA; and Article VI of the Compact. The Water Court concluded that under federal law, *United States v. Powers*, 305 U.S. 527, 59 S. Ct. 344 (1939), and the Compact, the Allottees are entitled to a "just and equal share" of the Tribal Water Right recognized by *Winters* and established in the Compact as "the right of the Crow Tribe, including any

7

Tribal member, to divert, use, or store water as described in Article III of this Compact." Section 85-20-901, MCA, Art. II, Sec. 30. The right of Allottees to a just and equitable allocation of the Tribal Water Right was confirmed by Congress in the Settlement Act, § 407(d)(2), (3).

¶14 The Water Court noted that the responsibility for allocating water to the Allottees rests with the Secretary of the Interior under the General Allotment Act, 25 U.S.C. § 381, and is delegated to the Crow Tribe by the Compact. Section 85-20-901, MCA, Art. IV, Sec. A.2.a, b. The Compact requires the Tribe to provide "Indians residing on the Reservation . . . to a just and equal portion of the Tribal Water Right." Art. IV, Sec. B.1. Congress included similar guarantees in the Settlement Act, §§ 402(1)(B) and 407(f)(2)(A). Pursuant to these provisions, the Water Court determined that any claims that the Allottees have regarding allocation of the Tribal Water Right must be addressed in some forum other than the Montana Water Court.

¶15 The Water Court observed that the United States, pursuant to its trust responsibility to administer Indian lands and property, *Lewis v. Hanson*, 124 Mont. 492, 496-97, 227 P.2d 70, 71 (1951), agrees that it represented the Allottees during the process of negotiating the Compact. The United States as trustee waived and released any claims of the Allottees in exchange for recognition of the Tribal Water Right and the Allottees' right to use a just and equal share of that right. Section 85-20-901, MCA; Act, § 410(a)(2). The Allottees contend that they were not individually consulted and were entitled to independent legal representation furnished by the United States. As noted,

they commenced an action in United States District Court seeking to establish that position.

¶16 The Water Court determined that because the Allottees were represented by the United States during Compact proceedings, their status is that of represented parties. The Water Court noted the "unique nature of water rights Compacts, including prior review and approval by the Governor, the Legislature, the Department of the Interior, Congress, and the Crow Tribe." Relying on case law regarding objections to consent decrees, the Water Court concluded that consideration of objections by represented parties is limited to a required showing that the negotiations were the product of fraud, collusion or overreaching among the negotiating parties. *Officers for Justice v. Civil Service Comm.*, 688 F.2d 615, 625 (9th Cir. 1982). This high standard precludes a reviewing court from substituting its judgment for that of the negotiating and settling parties. The Water Court determined that the Allottees, while dissatisfied, have not asserted that the Compact was the product of fraud, collusion or overreaching and so are bound by its terms.

¶17 The Water Court determined that the purpose of its proceeding

> is not for the Court to assess the relative merits of each party's position and adjust the outcome to conform to what the parties might have obtained from trial. That balancing of interests was addressed by the parties themselves during the negotiation process and reviewed at numerous levels by representatives of those parties after the Compact was finalized.

Further, since the objective of the Compact is "to define the Tribe's *Winters* rights, eliminate litigation risk and expense and achieve finality for the Tribe and other parties," there is no requirement at this stage that the Allottees' water claims be separately quantified. The Water Court determined that it was not tasked to review whether the

Tribe or other parties have fulfilled their responsibilities under the Compact, such as preparing a current water usage list.

¶18 The Water Court therefore granted the motions of the United States and the Crow Tribe and dismissed the Allottees' objections to the adoption of the Compact. The Allottees appeal.

## STANDARD OF REVIEW

¶19 This Court applies the same standards of review to decisions of the Water Court as it does to decisions of a district court. *Mont. Trout Unlimited v. Beaverhead Water Co.,* 2011 MT 151, ¶ 16, 361 Mont. 77, 255 P.2d 179. This Court reviews the Water Court's findings of fact under the clearly erroneous standard. *Weinheimer Ranch v. Pospisil*, 2013 MT 87, ¶ 19, 369 Mont. 419, 299 P.3d 327. This Court reviews the Water Court's conclusions of law de novo to determine whether they are correct. *Skelton Ranch v. Pondera Co. Canal & Res. Co*., 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644.

¶20 This Court reviews a court's orders related to trial administration, such as a motion to stay proceedings, for an abuse of discretion. *Wamsley v. Nodak Mut. Ins. Co.,* 2008 MT 56, ¶ 23, 341 Mont. 467, 178 P.3d 102.

## DISCUSSION

¶21 *Issue One: Whether the Water Court applied the proper legal standard of review in granting the motions to dismiss the Allottees' objections.*

¶22 The Allottees contend that the Water Court erred in dismissing their objections without applying Rule 12(b)(6), M. R. Civ. P., and accepting the truth of their allegations.

¶23 Water Court judges have the powers of a district court within their area of jurisdiction, § 3-7-224(3), MCA, and the Montana Rules of Civil Procedure generally apply to Water Court proceedings. Rule 2(b), Montana Water Adjudication Rules. However, that does not mean that Rule 12 (b)(6), M. R. Civ. P., applies to the Water Court's consideration of an objection to a water compact.

¶24 The Allottees have not presented any persuasive authority that the Water Court is bound to apply Rule 12(b)(6) when considering the disposition of an objection to a preliminary decree. Rule 12(b)(6) applies when a party moves to dismiss a complaint in a civil action. *Western Sec. Bank v. Eide Bailly*, 2010 MT 291, ¶ 55, 359 Mont. 34, 249 P.3d 35. There is nothing that requires the Water Court to apply Rule 12(b)(6) jurisprudence in its consideration of an objection to a preliminary decree. There is no authority that requires the Water Court to accept the truth of factual allegations made in an objection to a preliminary decree.[1] To the contrary, in water rights matters a properly filed claim of water right "constitutes prima facie proof of its content until the issuance of a final decree." Section 85-2-227(1), MCA.

¶25 Therefore, the Water Court did not err by not applying Rule 12(b)(6), M. R. Civ. P., in its review of the Allottees' objections to the Compact.

---

[1] In the Water Court proceedings the Allottees argued that the court "must construe Allottees' objections as being true . . . ."

11

¶26 *Issue Two: Whether the Water Court exceeded its jurisdiction by dismissing the Allottees' objections rather than staying consideration of the Compact pending resolution of the Allottees' action in United States District Court.*

¶27 The Allottees acknowledge that the McCarran Amendment, 43 USC § 666, specifically allows state courts to adjudicate federal and Indian reserved water rights. They contend, however, that this only allows state courts to "decide issues of federal Indian or constitutional law" but withholds from state courts the power to "decide Indian law issues of first impression; [they] can only apply existing federal law." Allottees cite *Greely v. Confederated Salish and Kootenai Tribes*, 219 Mont. 76, 712 P.2d 754 (1985) in support of this novel proposition. However, nothing in that decision supports such a proposition. *Greely* establishes that Montana courts are sufficient to provide a McCarran Amendment forum for the determination of federal and Indian water rights, and that they are "required to follow federal law with regard to those rights." *Greely*, 219 Mont. at 95, 712 F.2d at 765.

¶28 In this case the Water Court expressly applied federal law in its consideration of the Allottees' arguments that they have water rights that are "distinct from the Crow Tribe's reserved right." The Water Court applied *Powers* to determine that the Allottees' have water rights that are derived from the reserved rights of the Crow Tribe, and that they are entitled to use a just and equitable share of the Tribe's rights. As discussed above, the Tribe, the United States Congress and the State of Montana have all expressly recognized the Allottees' rights to a share of the Crow Tribal Water Right. Allottee rights are recognized in the Compact, which requires the Tribe to provide "Indians residing on the Reservation of . . . a right . . . to a just and equal portion of the Tribal

12

Water Right." Section 85-20-901, MCA, Art. IV, Sec. B.1. Congress included similar express guarantees in the Settlement Act, §§ 402(1)(B) and 407(f)(2)(A), stating "the intent of Congress to provide to each allottee benefits that are equivalent to or exceed the benefits allottees possess as of the date of enactment of this Act . . . ."

¶29 The Allottees contend that the Water Court erred in treating them as represented parties for purposes of considering the Compact. As noted above, existing law restricts the Water Court's power over Compact issues. The Compact was the product of extensive negotiations over a period of years, resulting in a negotiated compromise of interests and claims.

¶30 Montana law requires that the terms of a compact "must be included in a preliminary decree" and unless an objection to a compact is sustained, the terms of the compact must be included in the decree "without alteration." Section 85-2-702(3), MCA. The Compact requires that the Water Court's review of the Compact be "limited to Article III and Appendix 1" thereof, which specify in detail the Crow Tribe's reserved water rights. Section 85-20-901, MCA, Art. VII, Sec. B.3. As the Water Court recognized, determining the adequacy of the United States' representation of the Allottees is not within the scope of its review. The Water Court properly concluded that since the Allottees were represented in the Compact negotiations, its review of the compact was limited to determining whether the Compact was the "product of fraud, collusion or overreaching." In doing so, the Water Court relied, as it has in other cases,[2]

_____

[2] *Matter of the Adjudication of Existing and Reserved Rights to the Use of Water of the United States Forest Service Within the State of Montana*, Water Court Cause No. WC-2007-04.

13

upon the established rules for judicial oversight of consent decrees as set out in *Officers for Justice.*

¶31 The Allottees contend that the United States inadequately represented their interests during the extended negotiations that led to adoption of the Compact. They contend that they were entitled to separate representation that should have resulted in recognition and a listing of their claimed separate water rights. However, they have acknowledged, by filing a separate action on these issues in United States District Court, that this is not an issue that the Water Court can resolve. In fact, the Allottees contend that only the United States District Court can determine whether the United States breached a fiduciary duty to them. The Water Court determined only that the Allottees were represented by the United States, which they do not deny, and that this representation determined the level of scrutiny. The Water Court applied the fraud or collusion analysis from *Officers for Justice*. The Allottees contend that this was the wrong analysis to apply, but their alternative is that the Water Court should have applied a Rule 12(b)(6) analysis, construing all their allegations as true. As discussed above, Rule 12(b)(6) does not apply to this situation and the Water Court conducted the proper analysis.

¶32 The Allottees' contend that the Water Court should have stayed its final action on the Compact pending resolution of their separate lawsuit in United States District Court. We review a lower court's determination on a motion to stay proceedings to determine whether the court abused its discretion. *Lamb v. Dist. Ct.*, 2010 MT 141, ¶ 14, 356 Mont. 534, 234 P.3d 893. We consider whether the decision on the request for a stay was

14

arbitrary or exceeded the bounds of reason resulting in substantial injustice. *Wamsley*, ¶ 33.

¶33 It is clear that a final resolution of the Allottees' federal action will take an unknown but substantial period of time, which alone could fatally doom the future of the Compact. This would happen not because of any determination of the merits of the Compact, but simply because of the time it would take to finally resolve the Allottees' lawsuit and its aftermath. Congress provided for an automatic repeal of its approval of the Compact if the Water Court's decree, including the Compact, is not issued prior to March 31, 2016. Act, § 415. It would work a hardship and a potential injustice on the parties who have worked for many years to develop and implement the Compact to put everything in abeyance for an unlimited time, and to risk repeal of the Compact, to see whether the Allottees can prevail on their representation claims in federal court. We have upheld a district court's discretion refusing to stay a Montana lawsuit pending the outcome of a related lawsuit in another state, *Wamsley*, ¶ 33, or in a federal court, *Henry v. Dist. Ct.*, 198 Mont. 8, 14, 645 P.2d 1350, 1353 (1982).

¶34 The Water Court acted within its discretionary power to deny the Allottees' request for a stay and we find no error.

¶35 *Issue Three: Whether the Water Court erred in determining that the Allottees do not have individual water rights apart from the Crow Tribal Water Right; that the United States adequately represented the Allottees during the Compact negotiations; and whether a "current use list" is a prerequisite for including the Compact in a final decree.*

¶36 The issues regarding the nature of the Allottees' water rights and the representation of the Allottees during the negotiations were discussed above and need not

15

be repeated. The Allottees' objections to the Compact filed in the Water Court included the assertion that the Crow Tribe and the United States had not prepared a list of "current uses" of the Tribal Water Right, and that no action should be taken on the Compact until that list is prepared.

¶37 Article IV, Section E.2 of the Compact provides that after the Montana Legislature ratifies the Compact, the United States and the Crow Tribal Water Rights Division will provide the State with a "report listing all current uses of the Tribal Water Right, including uses by Tribal members . . . . The Allottees contend that no such report has been submitted to the State and that the Water Court should therefore not include the Compact in a final decree. However, the Compact attaches no such significance to the water use report, and specifically provides that the Compact is effective when "ratified by the Tribe, by the State and by the Congress of the United States. . . ." Section 85-20-902, MCA, Art. VII, Sec. A. Those ratifications have taken place. The Congressional Settlement Act, § 410(e), likewise, does not make the water use report a prerequisite to the validity of the Compact.

¶38 More to the point, there is no requirement that the specific water rights or claims of these Allottees be quantified as a precondition to implementing the Compact. As the Water Court explained:

> The objective of the Compact, which is a negotiated settlement, is to define the Tribe's *Winters* rights, eliminate litigation risk and expense, and achieve finality for the Tribe and other parties to the agreement. Although the parties to a Compact might agree to define allottees' right to use of the Tribal reserved water right, such a definition is not required to achieve settlement. Because the allottees' rights to use of water are derived from the Tribal reserved water right, there is no requirement in case law or

16

statute that a Compact separately quantify the allottees' rights to use of that water.

We find no basis for concluding that the Water Court should have deferred action on the Compact based upon the absence of a current use list.

¶39     We affirm the Water Court's order dismissing the Allottees' objections to the Compact and refusing to order a stay.

¶40     The Water Court's order of July 30, 2014, is affirmed.


                                        /S/ MIKE McGRATH

We Concur:


/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE