FILED

04/28/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0504

DA 19-0504

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 99

FLYING T RANCH, LLC.,

      Plaintiff and Appellant,

   v.

CATLIN RANCH, LP.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and For the County of Meagher, Cause No. DV-19-5
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Brian K. Gallik, Gallik, Bremer & Molloy, P.C., Bozeman, Montana

      For Appellee:

         Vuko J. Voyich, Anderson & Voyich, P.L.L.C., Livingston, Montana

         Submitted on Briefs:  March 4, 2020

                 Decided:  April 28, 2020

Filed:

_____
              Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Plaintiff and Appellant Flying T Ranch, LLC (Flying T) appeals the Decision and Order Regarding Defendant's Motion to Stay Proceedings issued by the Fourteenth Judicial District Court, Meagher County, on August 30, 2019. We reverse and remand for further proceedings.

¶2 We address the following dispositive issue on appeal:

*Did the District Court abuse its discretion by staying proceedings without holding a hearing on Flying T's motion for a preliminary injunction?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Flying T is a Montana limited liability company. In April 2014, Flying T purchased Section 25 of Township 8 North, Range 7 East in Meagher County. Flying T purchased title insurance from First American Title Insurance Company of Montana, Inc., an agent of First American Title Insurance Company (collectively First American), which insured against defects to the title, unmarketability of title, and lack of access to and from the land. After purchasing the property, Flying T began construction of a cabin to allow its members to engage in hunting and other recreational activities. To access its land, the members of Flying T and its construction crews would exit U.S. Highway 89 and then travel on a road known as the "Moss Agate Road" (Moss Agate). Moss Agate crosses the property of Catlin Ranch, LP (Catlin). In June 2014, the gate on Moss Agate was locked. After discussions with Catlin, the locks were removed and construction on Flying T's cabin resumed. Flying T improved portions of Moss Agate to allow better access for its construction crews.

2

¶4    In September 2014, propane was delivered to Flying T's cabin and the members of Flying T began to use the property for archery hunting. For the next three years, Flying T accessed the property via Moss Agate without interruption or hindrance. In September 2017, however, the gate at Moss Agate was once again locked. Todd Timbrook (Timbrook), managing member of Flying T, cut the lock, accessed the property via Moss Agate, and informed Catlin that he had cut the lock. Later in September 2017, Timbrook returned to the property via Moss Agate to hunt and meet with a well-driller. The well-driller also accessed the property via Moss Agate. In October 2017, Timbrook learned the Meagher County Attorney informed the Sheriff that Flying T did not have access to its property over Moss Agate. Flying T was thereafter unable to access its property via Moss Agate.

¶5    Flying T filed claims with its title insurer, First American. First American initially attempted to resolve the access issue but ultimately abandoned all efforts to obtain access over Moss Agate or other locations after Flying T advised that it would reject a possible easement over a different, sometimes unpassable, road, and First American further advised it would not cover the costs associated with providing drivable access to Flying T's property. Flying T then filed suit against First American on May 20, 2019, seeking damages from First American for, among other things, breach of contract and bad faith. On May 31, 2019, Flying T filed a separate suit against Catlin. In its suit against Catlin, Flying T sought a declaratory judgment that Moss Agate is either a county road, public highway, or that the public enjoys an easement, by prescription, across Moss Agate. Flying

3

T sought, in the alternative, a declaratory judgment that Flying T enjoys a private access easement over Moss Agate. Flying T also sought damages for Catlin's tortious interference with its access over Moss Agate, or, in the alternative, damages against Catlin for unjust enrichment due to the improvements Flying T made to Moss Agate.

¶6 On July 3, 2019, Flying T filed a motion for a temporary restraining order (TRO) and preliminary injunction, along with a brief in support, seeking to enjoin Catlin from interfering with Flying T's access to its property over Moss Agate. On July 17, 2019, Catlin filed a Motion to Stay Proceedings and Brief in Support. On July 26, 2019, Flying T filed a Brief in Opposition to Motion to Stay Proceedings & Request for Hearing re: Injunctive Relief. On July 29, 2019, the District Court issued an Order Setting Case Scheduling Conference, setting a hearing to set both a scheduling order and to set a hearing on the motion for injunctive relief for August 6, 2019. On August 9, 2019, after receiving extensions of time, Catlin filed the Defendant's Reply Brief to Plaintiff's Brief in Opposition to Stay Motion. Also on August 9, 2019, Flying T filed its Reply Brief in Support of Motion for Injunctive Relief Pending Trial. On August 16, 2019, Catlin filed its Answer to Complaint and Demand for Jury Trial. On August 30, 2019, without holding a hearing, the District Court issued its Decision and Order Regarding Defendant's Motion to Stay Proceedings, which stayed proceedings in Flying T's case against Catlin pending the resolution of Flying T's case against First American. The District Court further ordered that the "parties shall cooperate, through counsel, in ensuring that Flying T is able to have

propane delivered to its property via the Moss Agate Road that is in dispute herein, pending further order of the Court." Flying T appeals.

## STANDARD OF REVIEW

¶7     We review a district court's order on a motion to stay proceedings for an abuse of discretion. *Lamb v. Dist. Ct. of the Fourth Judicial Dist. of Mont.*, 2010 MT 141, ¶ 14, 356 Mont. 534, 234 P.3d 893 (citing *Wamsley v. Nodak Mut. Ins. Co.*, 2008 MT 56, ¶ 23, 341 Mont. 467, 178 P.3d 102). Because district courts are afforded a high degree of discretion to grant or deny preliminary injunctions, we will not overturn the district court's decision absent a manifest abuse of discretion. *BAM Ventures, LLC v. Schifferman*, 2019 MT 67, ¶ 7, 395 Mont. 160, 437 P.3d 142. "A manifest abuse of discretion is one that is obvious, evident, or unmistakable." *BAM Ventures*, ¶ 7 (quoting *Caldwell v. Sabo*, 2013 MT 240, ¶ 18, 371 Mont. 328, 308 P.3d 81).

## DISCUSSION

¶8     *Did the District Court abuse its discretion by staying proceedings without holding a hearing on Flying T's motion for a preliminary injunction?*

¶9     The District Court's August 30, 2019 Decision and Order, which stayed proceedings in the present case pending the outcome of Flying T's litigation against First American, functionally denied Flying T's motion for a TRO and preliminary injunction. The District Court's Decision and Order was issued without holding a hearing on Flying T's request for injunctive relief. To determine whether the District Court's order staying proceedings in this case was an abuse of discretion, we must first consider whether the District Court

5

manifestly abused its discretion by denying Flying T's motion for a preliminary injunction without holding a hearing.

¶10    The statute governing preliminary injunctions provides an injunction order may be granted in the following cases:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
>
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual;
>
> (4) when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition;
>
> (5) when it appears that the applicant has applied for an order under the provisions of 40-4-121 or an order of protection under Title 40, chapter 15.

Section 27-19-201, MCA.  In addition, "[b]efore granting an injunction order, the court or judge shall make an order requiring cause to be shown, at a specified time and place, why the injunction should not be granted, and the adverse party may in the meantime be restrained as provided in 27-19-314."  Section 27-19-301(2), MCA.

¶11    Flying T asserts the District Court manifestly abused its discretion by issuing the order which stayed proceedings and functionally denied Flying T's motion for a

6

preliminary injunction without a hearing. Flying T argues Montana law contains a clear requirement that a district court must hold a hearing on a request for a preliminary injunction before determining whether to grant or deny a preliminary injunction. Catlin asserts there is no requirement for a district court to hold a hearing when it denies a motion for a preliminary injunction. We agree with Flying T that a hearing on a motion for preliminary injunction is required before a district court may issue its decision.

¶12 "The limited function of a preliminary injunction is to preserve the *status quo* and to minimize the harm to all parties pending full trial[.]" *Yockey v. Kearns Props., LLC*, 2005 MT 27, ¶ 18, 326 Mont. 28, 106 P.3d 1185 (citing *Porter v. K & S P'ship*, 192 Mont. 175, 183, 627 P.2d 836, 840 (1981)). "The court receiving an application for injunction must 'make an order requiring cause to be shown, at a specified time and place, why the injunction should not be granted.'" *City of Great Falls v. Forbes*, 2011 MT 12, ¶ 12, 359 Mont. 140, 247 P.3d 1086 (quoting § 27-19-301(2), MCA).

¶13 The parties quibble over whether Flying T has made a prima facie showing it is entitled to a preliminary injunction; however, we need not address that argument to resolve the present case. As stated by this Court in *Forbes*, a district court who receives an application for a preliminary injunction "must make an order requiring cause to be shown, at a specified time and place, why the injunction should not be granted." *Forbes*, ¶ 12 (internal quotations omitted). The District Court in this case disregarded the mandate of *Forbes* and functionally denied Flying T's motion for preliminary injunction without

holding a hearing when it issued its August 30, 2019 Decision and Order Regarding Defendant's Motion to Stay Proceedings.

¶14 We further note that Flying T moved for a TRO when it sought a preliminary injunction. "Where an application for an injunction is made upon notice or an order to show cause, either before or after answer, the court or judge may enjoin the adverse party, until the hearing and decision of the application, by an order which is called a temporary restraining order." Section 27-19-314, MCA. A TRO, if issued, "generally precedes an injunction and is intended to last only until a hearing is held and a decision made on the injunction application." *Mktg. Specialists v. Service Mktg.*, 214 Mont. 377, 388, 693 P.2d 540, 546 (1985). While a district court retains discretion to grant or deny a TRO application without first holding a hearing, no such discretion exists on the question of whether to hold a hearing on a motion for a preliminary injunction—the court must hold one before either granting or denying preliminary injunctive relief. *Forbes*, ¶ 12.

¶15 The District Court's error in functionally denying Flying T's motion for a preliminary injunction without holding a hearing in this case is "obvious, evident, [and] unmistakable." *BAM Ventures*, ¶ 7. The District Court therefore committed a manifest abuse of discretion by denying Flying T's motion without first holding a hearing because Flying T was entitled under Montana law to a hearing on its motion before the District Court could determine whether or not a preliminary injunction should issue.

¶16 When reviewing a district court's decision on a motion to stay proceedings, we consider "whether the decision on the request for a stay was arbitrary or exceeded the

8

bounds of reason resulting in substantial injustice." *In re Crow Water Compact*, 2015 MT 217, ¶ 32, 380 Mont. 168, 354 P.3d 1217 (citation omitted).  An applicant for a stay "must make out a clear case of hardship or inequity in being required to go forward[.]" *Henry v. Dist. Ct. of the Seventeenth Judicial Dist.*, 198 Mont. 8, 13, 645 P.2d 1350, 1353 (1982) (citation omitted).

¶17     The District Court held that allowing Flying T's case against Catlin to go forward while Flying T's claims against First American were pending in a separate case would "create a clear case of hardship and inequity."  We disagree.  As we have previously discussed, the District Court manifestly abused its discretion by denying Flying T's motion for a preliminary injunction without first holding a hearing.  The District Court accomplished this manifest abuse of discretion by means of the Decision and Order staying proceedings.  For this reason alone, the District Court's order staying proceedings is an abuse of discretion.  Further, it is clear Flying T's case against Catlin is fundamentally different than its case against First American.  Flying T brought suit against First American for: breach of contract, breach of covenant of good faith and fair dealing, waiver, statutory bad faith, and negligence.  The jury in that case will determine if First American was negligent or breached its contract with Flying T and, if so, whether it violated its duty of good faith and fair dealing.  If successful, the jury would award damages to Flying T—it would not award access.  Whether or not First American breached its contract with Flying T does nothing to determine whether Moss Agate is a county or public road that has not been abandoned, whether the public enjoys a prescriptive easement across Moss Agate or

whether Flying T has a private access easement over Moss Agate via estoppel or reservation. Flying T does not seek a declaratory judgment which determines the status of Moss Agate in its litigation against First American, which is the clear thrust of its lawsuit against Catlin. Flying T presents several theories for the status of Moss Agate, including that it is a county road which has never been affirmatively abandoned through the actions of authorized government officials. *See Soup Creek LLC v. Gibson*, 2019 MT 58, ¶ 33, 395 Mont. 105, 439 P.3d 369. The determination of the status of Moss Agate therefore goes well beyond the claims Flying T has in its breach of contract and bad faith claim against First American, and any relief Flying T may ultimately obtain from First American in its bad faith claim would do nothing to determine the status of Moss Agate. While some issues relating to damages could potentially be duplicative between the two cases, Catlin did not demonstrate a clear case of hardship or inequity in being forced to defend the present lawsuit and the District Court erred when it determined otherwise.

¶18 Because the District Court manifestly abused its discretion by denying Flying T's motion for preliminary injunction without holding a hearing, its order staying proceedings in this case was also an abuse of discretion and this case must be remanded with instructions to lift the stay of proceedings and hold a hearing on Flying T's motion for a preliminary injunction.

**CONCLUSION**

¶19     Because the bad faith case did not cover all the issues in the present matter, the District Court abused its discretion by staying proceedings and denying Flying T's motion for preliminary injunction without a hearing.

¶20     Reversed and remanded for further proceedings consistent with this opinion.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR