ANDERSON, Respondent, *v.* SPEAR–MORGAN LIVESTOCK CO. et al., Defendants; MILNE et al., Appellants.

(No. 7,695.)

(Submitted April 21, 1938. Decided May 23, 1938.)

[79 Pac. (2d) 667.]

*Messrs. Lonabaugh & Lonabaugh,* of the Bar of Sheridan, Wyoming, for Appellants, submitted a brief.

*Messrs. Guinn & Maddox,* for Respondents Spear-Morgan Livestock Company, Soldier Creek Livestock Company, Lloyd Cook, Euna P. Cook, John W. Lee, and Barbara Lee, submitted a brief; *Mr. C. C. Guinn* argued the cause orally.

22

*Messrs. Burke, Anderson & Kronmiller,* for Respondent Cora B. Anderson.

*Mr. Louis J. Marr,* of Sheridan, Wyoming, for Respondents Irvin S. and Julia Jones, and C. E. and Margaret Erbaugh.

*Mr. John B. Tansil,* United States District Attorney, and *Mr. Kenneth R. L. Simmons,* District Counsel, U. S. I. I. S. Department of the Interior, appearing as *amici curiae* in behalf of the United States of America, submitted a brief and argued the cause orally.

24

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought in the district court of Big Horn county to adjudicate the rights of water users from Young's Creek and its tributaries. This creek and its tributaries rise in the Crow Indian Reservation, flowing from its source to and across the exterior boundaries of the reservation. Some of the water users who are parties to this action own lands without the reservation on which they have used waters diverted from Young's Creek when available. Other parties own lands in fee simple and lease other lands within the reservation; these lands are owned by allottees under trust patents.

The trial court held that it was without its jurisdiction to adjudicate the waters of this stream within the reservation, and made no attempt to adjudicate the rights of water users whose lands were within the reservation, but it did adjudicate the rights of those users whose lands are without the reservation. The findings, conclusions and decree were in accord with these views. The appeal is from the judgment.

It is contended that the court erred in finding that it was without jurisdiction to adjudicate with reference to the rights of the water users on the Crow Indian Reservation.

The Crow Indian Reservation was established by treaty between the United States and the Crow Indians, dated May 7, 1868 (15 Stat. 649). There was in this treaty no express reservation of waters for irrigation or other purposes; there was, however, an implied reservation of these waters for irrigation purposes. (*Winters* v. *United States*, 207 U. S. 564, 28 Sup. Ct. 207, 52 L. Ed. 340; *United States* v. *Powers* (9th Cir.), 94 Fed. (2d) 783.) The federal government, having reserved these waters on the reservation, was the owner of them and it was unnecessary for it to make an appropriation of these waters. (*Story* v. *Woolverton*, 31 Mont. 346, 78 Pac. 589.) These waters were reserved by the United States for the use of the Crow Indians, and, being owned by it, were not the subject of further appropriation by others.

The United States may not be sued, either at law or in equity, without its consent, and whoever institutes such proceedings must present his case within the authority of some Act of Congress. (*United States* v. *Clarke,* 8 Pet. 436, 11 U. S. 436, 8 L. Ed. 1001; *Stanley* v. *Schwalby,* 147 U. S. 508, 13 Sup. Ct. 418, 37 L. Ed. 259; *State of Louisiana* v. *McAdoo,* 234 U. S. 627, 34 Sup. Ct. 938, 58 L. Ed. 1506.) The same exemption from judicial process extends to the property of the United States. (*Stanley* v. *Schwalby,* supra.)

Here the United States was not named as a party to the record; but the question whether it is in legal effect a party to a controversy is not always determined by the fact that it is not named as a party on the record, but by the effect of the judgment or decree which can be rendered in the proceeding. (*State of Louisiana* v. *McAdoo,* supra.)

It was sought in this action to adjudicate the rights of lessees of Indian allotments to use the water diverted from Young's Creek upon such lands within the reservation. As to these allotments held by allottees under trust patents, the right to use the water appurtenant to these lands is the property of the United States, and, hence, the state court was without jurisdiction to enter a decree affecting such rights.

As to other lands within the reservation, one or more of the defendants own some of their lands in fee. These lands were originally allotment lands but to which fee patents have been issued and then the lands were conveyed to persons other than Indians, who, in turn, conveyed to the defendants in fee.

Section 381, Title 25, U. S. C. A., provides: "In cases where the use of water for irrigation is necessary to render the lands within any Indian reservation available for agricultural purposes, the Secretary of the Interior is authorized to prescribe such rules and regulations as he may deem necessary to secure a just and equal distribution thereof among the Indians residing upon any such reservation; and no other appropriation or grant of water by any riparian proprietor shall be authorized or permitted to the damage of any other riparian proprietor. (Feb. 8, 1887, chap. 119, sec. 7, 24 Stat. 390.)" The purpose

of this statute is to provide for the distribution of the right to use the water to the individual Indians. (*United States* v. *Powers* (D. C.), 16 Fed. Supp. 155; Id. (9th Cir.), 94 Fed. (2d) 783.) The right to use the water prior to a distribution of it by the Secretary of the Interior may be said to be inchoate in the sense that the precise amount or extent of the right assigned to an individual allottee would be undetermined, but the right is vested in so far as the existence of the right to use the water in the allottee is concerned. The right is appurtenant to the land upon which it is to be used by the allottee. When the allottee became seized of fee simple title, after the removal of the restrictions of the trust patent, then a conveyance of the land, in the absence of a contrary intention, would operate to convey the right to use the water as an appurtenance. (*United States* v. *Powers*, supra.)

The clear intent of section 381 is to result in a prorating of the waters of a stream among the riparian owners. The title to the right to use the water of Young's Creek as to some of the riparian lands is in the United States. In order to determine the extent of each right it would require the determination of the amount and extent of every other right on the stream within the reservation. Therefore, of necessity, in order to make an adjudication of any right on the stream within the reservation, the United States would be an indispensable party to the proceeding. We have demonstrated that the United States could not be made a party to this action for lack of jurisdiction; hence the trial court properly held that it was without jurisdiction to adjudicate any of the water rights on the Crow Indian Reservation.

As we have noticed, the trial court did adjudicate the rights of certain water users whose lands lie without the reservation and who diverted waters from Young's Creek, if any flowed in it, after its course is without the reservation.

John A. Milne, who was the predecessor in interest of these appellants, filed his verified notice of appropriation on November 28, 1894, in the office of the county clerk and recorder of the proper county. It was subscribed and sworn to on No-

vember 23, 1894, and recited that he had posted a notice conforming with the statute, section 7100, Revised Codes, at his proposed point of diversion on November 20, 1894. The recorded notice conforms to the provisions of section 7100, and it was filed within the time provided by that section. This record, when duly made, is prima facie evidence of its contents. (Sec. 7104; *Musselshell Valley Farming & Livestock Co.* v. *Cooley*, 86 Mont. 276, 283 Pac. 213.) The evidence is all to the effect that within the statutory time, late in the fall of 1894, the claimant commenced the construction of his ditch. Construction operations were soon suspended owing to freezing weather. The ditch was constructed during the next year, and according to the testimony of some witnesses, irrigation was not commenced with water diverted through this ditch until in the spring of 1896. The ditch was approximately a mile and a half in length. The court found that the predecessor in interest of these appellants, by Findings 6 and 7, made an appropriation of water by the construction of a ditch as of May 15, 1896.

The appellants contend that the court found an appropriation of water as of the date of its first use, whereas it should have found an appropriation as of the date of the posting of the notice. In *Bailey* v. *Tintinger*, 45 Mont. 154, 172, 122 Pac. 575, this court said: "In each of these decisions there is a very clear recognition of two distinct methods of appropriating water since the enactment of the statute upon the subject, as we have outlined above. We are satisfied that the statutory method of making an appropriation is entirely distinct from the method which may be pursued under the rules and customs of the early settlers; and, furthermore, that the statute provides for all the steps necessary to be taken by one who follows them, to secure a completed appropriation. Those steps are: (1) Posting notice. (2) Filing notice with the county clerk and recorder. (Sec. 4847.) (3) Commencing work within forty days after posting notice. (4) Prosecuting such work with reasonable diligence. And (5) actual completion of the work. (Sec. 4848.) These are all the requirements of the Code, and by what authority shall any additional exaction be made? 'The Code establishes the

law of this state respecting the subjects to which it relates.' (Sec. 6214.) Our conclusion is in entire harmony with the theory of appropriation as shown by the history of its origin, growth, and purpose; and if our conclusion is not correct, then there is not any such thing as an appropriation of water under or by virtue of the statute. Either the statute provides a complete mode of acquiring the right to use water by appropriation, or it does not prescribe any at all. * * * In proceeding under the rules and customs of the early settlers, whether before or since the enactment of the statute, the intending appropriator must take actual possession of the water; but from one who proceeds under the statute, actual use of the water cannot be exacted as a prerequisite to a completed appropriation. The statute does not require it, but, on the contrary, makes provision, compliance with which is the equivalent of actual possession.''

In order to perfect a statutory appropriation of water, the claimant must construct his ditch through which his water is to be diverted with reasonable diligence. (Sec. 7101, Rev. Codes.) While there is some evidence tending to show that the appropriator did not work continuously on the construction of his ditch during the year 1895, in view of the length and size of the ditch, the evidence did not warrant an implied finding to the effect that he did not proceed with reasonable diligence. Without such implied finding, the decree cannot stand with reference to the rights of appellants. The trial court should have found that the essential elements of a statutory appropriation existed, and awarded appellants rights as of the date of the posting of the notice of appropriation—November 20, 1894.

The defendant Lee contends that the court was in error in failing to find, and decree in his favor, a right out of Tanner Creek to be a prior right to the other rights adjudicated. The court found that Tanner Creek has but little water flowing in it; that most of its flow is flood water and that it is a tributary of Young's Creek. Tanner Creek, where there is sufficient water flowing in it, flows into Young's Creek. According to the testimony of all witnesses, it is only in time of flood that any water

from Tanner Creek flows into Young's Creek, although some water flows in it near the residence of defendant; this, however, in the absence of flood, does not reach the confluence of the two streams. This evidence did not justify the court in finding that Tanner Creek is a tributary of Young's Creek. (*Wills* v. *Morris*, 100 Mont. 504, 50 Pac. (2d) 858.)

The cause is remanded to the district court of Big Horn county with directions to modify its findings, conclusions and decree in accordance with the views herein expressed, and when the decree is so modified, the judgment will stand affirmed. All parties to this appeal will pay their own costs in this court.

ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.