LEWIS, Respondent, *v.* HANSON, et al., Appellants.
No. 9015.
Submitted December 6, 1950. Decided January 26, 1951.
227 Pac. (2d) 70.

Mr. Rockwood Brown, Mr. Horace S. Davis, Mr. Norman Hanson and Mr. William H. Bellingham, all of Billings, for appellants.

Mr. Kenneth R. L. Simmons, Billings, and Mr. Leonard S. Strahan, Lovell, Wyo., for respondent.

Mr. Davis, Mr. Simmons and Mr. Strahan argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal from a final judgment. A jury was impanelled but at the conclusion of the evidence its services, by agreement of the parties, were dispensed with.

The court made the following findings and conclusions: That plaintiff is the owner of certain described lands in Big Horn county all of which lie within the Crow Indian Reservation as established by treaty of May 7, 1868, 15 Stat. 649, and as it still exists after being diminished in area by later Congressional Acts; that the defendants are the owners of certain described land situated in the same township and range as that of plaintiff and that it was within the reservation as originally defined by treaty on May 7, 1868, but that by agreement between the Crow Tribe

of Indians and the United States, ratified by the Act of March 3, 1891, 26 Stat. 1039, defendants' lands with others were ceded to the United States and became a part of the public domain lying without the boundaries of the reservation as it now exists; that Dry Head Creek rises and flows wholly within the Crow Indian Reservation except for approximately ¼ of a mile and flows in a general easterly direction to its confluence with the Big Horn River; that the South Fork of Dry Head Creek rises off the reservation and flows in a northerly direction upon and across the lands of defendants, and thence across some of the lands of plaintiff emptying into Dry Head Creek on plaintiff's land; that part of plaintiff's land was deeded without limitation or restriction by the United States to Charles Phelps, a Crow Indian allottee on March 10, 1915; Phelps thereafter deeded to Frank M. Heinrich, a white man, who later deeded to plaintiff.

Some of plaintiff's land was deeded without limitation or restriction by the United States to Pearl Scott, a Crow Indian allottee on July 26, 1923; Pearl Scott on May 20, 1926, deeded to Frank M. Heinrich and he to plaintiff; the other tract of plaintiff's lands was deeded without limitation or restriction by the United States to Charles Phelps and Rose Phelps, the heirs of Lee Phelps, a Crow Indian allotee on November 3, 1919; they were deeded to Frank Heinrich on September 13, 1919, and later by him to plaintiff; that none of the waters of Dry Head Creek or its tributary the South Fork were ever taken, appropriated or used by the Indian allottees; that the first use of the waters of Dry Head Creek or its tributary the South Fork on any of the lands now owned by plaintiff was in the year 1917 by Frank M. Heinrich; that of plaintiff's lands 150 acres are susceptible of irrigation, with the waters of the South Fork of Dry Head Creek; that on April 1, 1904, C. L. Hammond appropriated under the laws of Montana, 100 miner's inches of the waters of the South Fork of Dry Head Creek for use on lands now owned by defendant, Eva M. Hammond as successor in interest of C. L. Hammond and has continuously used and now uses the same to

irrigate 44.63 acres of otherwise arid and unproductive land; that on May 8, 1897, one A. Gressman and Henry Mogan appropriated under the laws of Montana 500 miner's inches of the waters of the South Fork of Dry Head Creek for use on lands now owned by defendants Floyd Hanson, Ezra Hanson and Sara Hanson as successors in interest of A. Gressman and Henry Mogan and that the waters have been continuously used and are now being used by defendants on their lands for the irrigation of 39.26 acres of otherwise arid and unproductive land; that a minimum of one miner's inch of water per acre is necessary and required for the efficient irrigation of the irrigable acres of plaintiff's and defendants' lands; that the maximum amount of water flowing in the South Fork of Dry Head Creek available for the irrigation of the lands of plaintiff and defendants is 150 miner's inches; that all of the waters of the South Fork are needed for the adequate irrigation of plaintiff's lands; that the Secretary of Interior has never made any allocation or distribution of the waters of Dry Head Creek or its tributaries nor has the United States done so through any other means; that by the establishment of the Crow Indian Reservation in 1868 the United States became and ever since has been the trustee for the Crow Tribe of Indians holding legal title to all the waters within the reservation and that there was reserved for the Crow Indians on May 7, 1868, all the waters of reservation streams for beneficial uses upon reservation lands.

As conclusions the court found that each acre of land on the reservation susceptible of irrigation with the waters of the South Fork of Dry Head Creek has a first and equal right to the use of such waters with the date of priority as of May 7, 1868, and that plaintiff has a right to all the waters of Dry Head Creek necessary for the successful and adequate irrigation of 150 acres of his lands with the date of priority as of May 7, 1868, prior and superior to the rights of defendants. A decree was entered enjoining defendants from the use of any of the waters of Dry Head Creek and its tributaries until plaintiff has first diverted

sufficient for the successful and adequate irrigation of 150 acres. From this decree, defendants have appealed.

Defendants contend that the court was without jurisdiction to proceed with the action since the United States was not a party.

Plaintiff takes the position that since the action is not one to adjudicate rights but only to enjoin defendants from diverting any of the waters of the South Fork of Dry Head Creek the United States is not an indispensable party and need not be joined. To adequately consider this question we must ascertain what conditions must exist before the court may enjoin the diversion of reservation waters.

By the Treaty of May 7, 1868, creating the reservation, the right to the waters of reservation streams for irrigation and other purposes was impliedly reserved for the use of the Indians. Winters v. United States, 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340. Upon conveyance of the land by an Indian the water right passes to the grantee as an appurtenance unless a contrary intention appears. United States v. Powers, 9 Cir., 94 F. (2d) 783, affirmed in 305 U. S. 527, 59 S. Ct. 344, 83 L. Ed. 330, and Anderson v. Spear-Morgan Livestock Co., 107 Mont. 18, 79 Pac. (2d) 667, 669.

By the creation of the reservation, title to the waters was vested in the United States as trustee for the Indians. Section 381, Title 25 U. S. C. A., provides: ''In cases where the use of water for irrigation is necessary to render the lands within any Indian reservation available for agricultural purposes, the Secretary of the Interior is authorized to prescribe such rules and regulations as he may deem necessary to secure a just and equal distribution thereof among the Indians residing upon any such reservations; and no other appropriation or grant of water by any riparian proprietor shall be authorized or permitted to the damage of any other riparian proprietor.''

By stipulation it was shown that there are many tracts of land, both allotted and unallotted within the reservation, held in trust

by the United States for the Crow Tribe of Indians and also for individual members of the tribe to whom trust patents have been issued which land is susceptible to irrigation with the waters of the South Fork of Dry Head Creek and Dry Head Creek within the Crow Indian Reservation. The record shows there has been no allocation of the waters of these streams to any of the lands on the reservation.

Defendants' contention is that there is no right to the use of any specified amount of water of any reservation stream until the necessities of every acre of Indian land have been determined in some competent proceeding to which the United States, as trustee for the Indians, is a party.

They rely principally upon the case of Anderson v. Spear-Morgan Livestock Co., supra, in which this court said: ''The clear intent of section 381 is to result in a prorating of the waters of a stream among the riparian owners. The title to the right to use the water of Young's Creek as to some of the riparian lands is in the United States. In order to determine the extent of each right it would require the determination of the amount and extent of every other right on the stream within the reservation. Therefore, of necessity, in order to make an adjudication of any right on the stream within the reservation, the United States would be an indispensable party to the proceeding. We have demonstrated that the United States could not be made a party to this action for lack of jurisdiction; hence the trial court properly held that it was without jurisdiction to adjudicate any of the water rights on the Crow Indian Reservation.''

Other cases taking the same view are Moody v. Johnston, 9 Cir., 66 F. (2d) 999; Gerard v. Mercer, D. C., 62 F. Supp. 28, and United States v. Alexander, 9 Cir., 131 F. (2d) 359, and compare also United States v. Powers, supra, and United States v. McIntire, 9 Cir., 101 F. (2d) 650.

Plaintiff contends that the foregoing cases are distinguishable from this because in those cases the pleadings sought an adjudication of water rights whereas here the complaint merely

seeks an injunction. Plaintiff's contention is summarized in his brief as follows: ''The amount of water respondent [plaintiff] would be entitled to use upon his lands would depend on several factors; Respondent, having the first right to the use of those waters, would be entitled to receive 150 miner's inches of water delivered on his lands, providing such amount of water was available in the south fork of Dry Head Creek. In the event any lesser amount was available he would be entitled to receive all of the water available in this creek. In the event certain trust lands on the reservation were in condition to be irrigated from the waters of this stream such water would have to be prorated between the irrigable lands of respondent and the irrigable lands of the Crow Tribe or members of the Crow Tribe—each acre of land to receive the same amount of water as any other acre *being irrigated;* the water division to be based upon the number of acres *being irrigated* and the amount of water *available during the irrigation season.''* Emphasis supplied.

Plaintiff's counsel asserts that this method of allocation was followed in the second Powers case which is unreported.

Before a party may have an injunction he must of necessity establish his rights thereto. Compare 28 Am. Jur., Injunctions, sec. 25, p. 218; 43 C. J. S., Injunctions, sec. 53, page 509. And in this case before plaintiff may prevail he must submit proof of the right to the use of a specified quantity of water. From what has been said above there is sharp difference of opinion as to whether plaintiff may use more than his just and equal share of the waters of the reservation.

His position is that his just and equal share is increased by the fact that many Indian allottees have never used the waters to which they are entitled.

Defendants on the other hand contend that plaintiff's right to his just and equal share of the waters is not affected by the fact that many Indian allottees have never used their share of the water.

In determining who are necessary parties we cannot speculate as to how the case might be decided.

As was said in United States v. Alexander, supra, ''There is certainly no assurance that a decree in favor of the absent parties would be made. It might be against them, in which event the absent parties would be injuriously affected.'' [131 F. (2d) 361.]

Were we to sustain defendants' contention we would of necessity have to make an adjudication affecting the right of the United States as trustee for the Indians. The United States is therefore a necessary party.

The objection to the introduction of testimony based upon the ground that the United States, a necessary party, was not before the court, should have been sustained.

The judgment is reversed and the cause remanded with directions to dismiss the action.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES METCALF, BOTTOMLY and FREEBOURN, concur.

Rehearing denied February 14, 1951.