FILED

09/19/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0031

DA 17-0031

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 230

SCOTT RANCH, LLC, a Montana
Limited Liability Company,

      Appellant.

APPEAL FROM:    Montana Water Court, Cause No. WC 2016-04
                     Honorable Russ McElyea, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Jordan W. Knudsen, Knudsen & Knudsen, PLLC, Hardin, Montana

       For Amicus Curiae:

           Nathan A. Espeland, Espeland Law Office, PLLC, Columbus, Montana
           (*Attorney for the Apsaalooke (Crow) Tribe*)

           John L. Smeltzer, United States Department of Justice, Environment and
           Natural Resources Division, Appellate Section, Washington, DC
           (*Attorney for the United States of America*)

           Timothy C. Fox, Montana Attorney General, Jeremiah D. Weiner,
           Assistant Attorney General, Helena, Montana
           (*Attorney for the State of Montana*)

                         Submitted on Briefs:  August 2, 2017

                                  Decided:  September 19, 2017

Filed:

_____
                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Scott Ranch, LLC, acquired Indian allotment lands in 2010 and in 2012 that were previously held in trust by the United States for the benefit of Thor Lande, a member of the Apsaalooke (Crow) Tribe. Lande died in 1997, and the lands were converted to fee status in 2006. Scott Ranch petitioned the Water Court in 2016 for adjudication of existing water rights appurtenant to the lands. The court denied Scott Ranch's petition. It held that the lands were part of the Tribal Water Right established by the Crow Water Rights Compact and did not require a separate adjudication. Scott Ranch appeals. We reverse.

¶2    We restate the dispositive issue as follows:

*Whether the Water Court had jurisdiction to adjudicate Scott Ranch's water rights claims.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Scott Ranch is a Montana limited liability company owned by three non-Indian siblings. It owns allotment lands located in Big Horn County, within water basin 43P and within the boundaries of the Crow Indian Reservation. The lands formerly were held in trust by the United States for the benefit of Thor Lande, an allottee of the Crow Reservation's federally reserved water right and a member of the Crow Tribe. Lande died in 1997. The United States issued fee patents and converted the lands to fee status in 2006. Scott Ranch purchased the lands from an heir of Lande in 2010 and in 2012.

¶4    Scott Ranch filed a petition for adjudication of existing water rights in July 2016. It asserted that all of its forty-seven claims were exempt from the claim filing

2

requirements of §§ 85-2-221 and -222, MCA, because they were "for stock or individual domestic use, based upon instream flow or groundwater sources." Scott Ranch asserted that its water rights were not available for state adjudication until 2006, when the fee patents were issued. It asked the Water Court to declare that it possessed "*Walton*" rights—private water rights held by a non-Indian successor to allotment lands that are derived from the allottee's share of the federally reserved water right for the reservation—as appurtenances to the lands. It filed the petition "out of necessity" on the ground that the recent issuance of fee patents created "a unique set of facts" that prevented Scott Ranch or its predecessors-in-interest from seeking adjudication until this time. It noted also that the Water Rights Compact between the Crow Tribe, the State of Montana, and the United States (Crow Compact) did not address or adjudicate its water rights and that neither the April 2013 Crow Current Use List nor the January 2016 Preliminary Decree of Basin 43P contained its rights.

¶5 Shortly after Scott Ranch filed its petition, the Water Master contacted Scott Ranch's counsel by telephone and recommended that counsel file the matter with the Department of Natural Resources and Conservation (the Department) under the exempt claims filing procedures. Scott Ranch responded by filing a motion for a ruling on its petition for adjudication. It asked the Water Court to determine that its claimed water rights were federally reserved *Walton* rights that fell under the general adjudication of the Water Court. Scott Ranch asserted in this motion that its claims did not fall within the scope of § 85-2-222, MCA, as exempt claims because the rights were tied to Indian Trust land until 2006. In addition, Scott Ranch acknowledged that two of its claims would not

3

be exempt under the statute. Therefore, Scott Ranch argued, the exempt claims filing procedures did not apply.

¶6 The Water Court held a hearing on Scott Ranch's petition in September 2016. The United States, the Crow Tribe, and the Montana Attorney General participated in the hearing but did not intervene in the proceeding or submit briefing.

¶7 In November 2016, the court denied Scott Ranch's petition. It held that Scott Ranch's water rights were part of the Tribal Water Right established on behalf of the Crow Tribe and its allottees under the Crow Compact. The court reasoned that Scott Ranch's water rights were appurtenant to an allotment, that the allottee's water rights were part of the Tribal Water Right, and therefore that Scott Ranch had a right to share in the Tribal Water Right. The court concluded that Scott Ranch's water rights therefore did not require separate adjudication.

¶8 Scott Ranch moved to alter or amend the judgment under M. R. Civ. P. 59(e), and for relief from final judgment or order under M. R. Civ. P. 60(b). It urged the court to hold that its *Walton* rights were not part of the Tribal Water Right and that they should instead be subject to the jurisdiction of the State of Montana.

¶9 The court denied Scott Ranch's motions in December 2016. It reasoned in part that Scott Ranch's claimed water rights did not come into existence until after the Legislature ratified the Crow Compact in 1999. The court explained that "the only water right remaining *after* the Compact was ratified was the Tribal Water Right." It stated that the tribal allottees had "no independent claim to a separate water right" apart from the

Tribal Water Right, and therefore that the allottees could not have conveyed such a separate right to Scott Ranch.

## STANDARDS OF REVIEW

¶10    This Court applies the same standards of review to decisions of the Water Court as it does to decisions of a district court. *In re Crow Water Compact*, 2015 MT 217, ¶ 19, 380 Mont. 168, 354 P.3d 1217. We review the Water Court's findings of fact to determine if they are clearly erroneous and its conclusions of law de novo to determine whether they are correct. *In re Crow Water Compact*, ¶ 19. We review a court's conclusion as to its jurisdiction de novo. *Interstate Explorations, LLC v. Morgen Farm & Ranch, Inc.*, 2016 MT 20, ¶ 6, 382 Mont. 136, 364 P.3d 1267.

## DISCUSSION

¶11    *Whether the Water Court had jurisdiction to adjudicate Scott Ranch's water rights claims.*

¶12    Scott Ranch argues that the Water Court erred in determining that its claims were part of the Tribal Water Right and therefore not governed by state law. It asks us to reverse the court's decisions and to instruct the court to declare that its water rights are recognized under state law. Amici United States, State of Montana, and Crow Tribe urge us to reverse the Water Court on the grounds that the court did not have jurisdiction to adjudicate Scott Ranch's claims and that the court erroneously held that Scott Ranch possessed an interest in the Tribal Water Right.

¶13    The Montana Legislature enacted the Water Use Act of 1973 (the Act) in order to "provide for the administration, control, and regulation of water rights and establish a

system of centralized records of all water rights," as mandated by the Montana Constitution. Section 85-2-101(2), MCA; 1973 Mont. Laws ch. 452, § 2; Mont. Const. art. IX, § 3(4). The Act required the Department to begin the process of determining "existing" water rights. 1973 Mont. Laws ch. 452, § 6. The Act defines an "existing water right" as "a right to the use of water that would be protected under the law as it existed prior to July 1, 1973." Section 85-2-102(12), MCA. For water rights based on appropriations after July 1, 1973, the Act provides for a mandatory permitting process administered by the Department. Sections 85-2-301 to -381, MCA.

¶14 In 1979, the Legislature created a unified process for the general adjudication of existing water rights throughout the state. 1979 Mont. Laws ch. 697, §§ 1-38; § 85-2-701(1), MCA. The Legislature expressed its intent to include existing federal "reserved Indian water rights" as part of the general adjudication. 1979 Mont. Laws ch. 697, § 27; § 85-2-701(1), MCA. Under the terms of the Act, owners of existing water rights were required to file claims with the Department by April 30, 1982, or abandon their claims to those rights. *Matter of the Adjudication of Water Rights in the Yellowstone River*, 253 Mont. 167, 171, 832 P.2d 1210, 1212 (1992) (citing §§ 85-2-221 and -226, MCA). The Legislature later extended that deadline to July 1, 1996. Section 85-2-221(3), MCA. The Act provides that the "[D]epartment and the district courts may not accept any statements of claim" for existing water rights submitted after July 1, 1996. Section 85-2-221(4), MCA.

¶15 The water rights claimed by Scott Ranch are "existing" rights, as defined by § 85-2-102(12), MCA. Under federal law, the creation of an Indian reservation impliedly

6

reserves to the tribe water rights on that reservation necessary to fulfill the purposes of the reservation, with the priority date being the date of the reservation's creation. *Lewis v. Hanson*, 124 Mont. 492, 496, 227 P.2d 70, 72 (1951) (citing *Winters v. United States*, 207 U.S. 564, 28 S. Ct. 207 (1908)); *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 46 (9th Cir. 1981). The Crow reservation was established by treaty in May 1868. *United States v. Powers*, 305 U.S. 527, 528, 59 S. Ct. 344, 345 (1939). The federally reserved water rights for the Crow Tribe thus have a priority date of May 1868—the date of the reservation's creation. *See Lewis*, 124 Mont. at 496, 227 P.2d at 72; *Walton*, 647 F.2d at 46. The Tribe's federally reserved water rights were thus "existing" prior to July 1, 1973. Section 85-2-102(12), MCA.

¶16 When a tribal member conveys allotment land to a non-member, the water rights appurtenant to the land transfer to the non-member. *Walton*, 647 F.2d at 50; *Lewis*, 124 Mont. at 496, 227 P.2d at 72 ("Upon conveyance of the land by an Indian the water right passes to the grantee as an appurtenance unless a contrary intention appears."). Non-Indian successors to Indian allotment lands thus acquire "*Walton*" rights—a "right to share in reserved waters." *Walton*, 647 F.2d at 50. As the non-Indian successor-in-interest to allotment lands conveyed by a tribal member, Scott Ranch possesses *Walton* water rights as appurtenances to the lands it acquired. *See Lewis*, 124 Mont. at 496, 227 P.2d at 72; *Walton*, 647 F.2d at 50.

¶17 Scott Ranch's *Walton* rights arose out of the transfer of land from a tribal allottee, not out of the Crow Compact. Under the terms of the Crow Compact itself, a "water right held by a nonmember of the Tribe on land not held in trust by the United States for

7

the Tribe or a Tribal member" is a right "Recognized Under State Law." Section 85-20-901, Art. II.19, MCA. Scott Ranch is a "nonmember" of the Crow Tribe, and the lands it acquired are "not held in trust by the United States." Section 85-20-901, Art. II.19, MCA. Scott Ranch's claims are recognized under state law and are not part of the Tribal Water Right under the Crow Compact.[1] The Water Court erred in concluding otherwise.

¶18 As claims for existing water rights recognized under state law, Scott Ranch's claims were subject to the general statewide adjudication—and the July 1, 1996 filing deadline—"unless exempted under 85-2-222." Section 85-2-221(1), (4), MCA. Section 85-2-222, MCA, exempts pre-1973 water rights claims for "livestock and individual uses as opposed to municipal domestic uses based upon instream flow or ground water sources." Section 85-2-222(1), MCA. Under recent amendments to the Act, a party claiming an exempt water right has until June 30, 2019, to file "a statement of claim for each water right asserted." 2017 Mont. Laws ch. 338, § 3. A party seeking adjudication of "exempt" claims must follow specific procedures for filing the claims with the Department. 2017 Mont. Laws ch. 338, § 3. Failure to file a claim for an exempt right by the 2019 deadline "does not result in the forfeiture" of the existing right, but it "subordinates the existing right to all other water rights except those exempt rights for which a claim has not been filed." 2017 Mont. Laws ch. 338, § 3.

---

[1] The Water Court relied in part on our holding in *In re Crow Water Compact* for its conclusion that Scott Ranch could not, as a successor of Indian allotment lands, claim water rights separate from the Tribal Water Right. The petitioners in that case were allottees and members of the Crow Tribe. *In re Crow Water Compact*, ¶ 10. Scott Ranch is not a member of the Crow Tribe. As such, our holding in *In re Crow Water Compact* is not on point.

¶19 Nearly all of Scott Ranch's forty-seven claims were for "livestock" or "individual uses" and were thus exempt from the filing requirements of § 85-2-221(1), MCA. *See* § 85-2-222(1), MCA. Scott Ranch asserted in its initial petition that all of its claims were exempt under § 85-2-222, MCA. Yet in its subsequent motion for ruling on its petition for adjudication, Scott Ranch clarified that two of its claims were not exempt and argued that the exempt claims filing process provided by § 85-2-222, MCA, did not apply to its claims. It asked the Water Court for a determination "that these claims are federally reserved claims that fall under the general adjudication of the Water Court, and not the exempt claim process." Scott Ranch acknowledges on appeal that it "did not believe its water rights claims fell within the scope of § 85-2-222." Scott Ranch thus did not "request a judicial determination" from the Water Court of its exempt rights and therefore did not file an exempt claim. Section 85-2-222(2), MCA.

¶20 The Water Court has jurisdiction over "matters relating to the determination of existing water rights within the boundaries of the state." Section 3-7-224(2), MCA. It may not, however, accept any statements of claim for non-exempt, existing rights submitted after July 1, 1996. Section 85-2-221(4), MCA. Scott Ranch petitioned the Water Court to declare that its existing claims fell under the general adjudication of the court. Scott Ranch disavowed that the exempt claims process applied, and did not follow the process prescribed by § 85-2-222, MCA, for seeking judicial determination of exempt claims. Its non-exempt claims were subject to the July 1, 1996 deadline for existing water rights. *See* § 85-2-221(1), (3), MCA. The Water Court was thus barred from hearing Scott Ranch's post-July 1, 1996 petition as it was filed. *See* § 85-2-221(4),

9

MCA. It therefore lacked jurisdiction to adjudicate Scott Ranch's claims, and it erroneously proceeded to address the merits of the petition.

¶21 Although the Water Court lacked jurisdiction over Scott Ranch's petition as filed, the Legislature has allowed owners claiming existing, exempt water rights—such as Scott Ranch—to file statements of claim until June 30, 2019. 2017 Mont. Laws ch. 338, § 3. Insofar as Scott Ranch's exempt claims are concerned, it should follow the procedures set forth by the 2017 Legislature for submitting its claim to the Department for examination prior to the deadline.

¶22 The circumstances surrounding Scott Ranch's water rights claims present a somewhat unusual situation. The allotment lands that it acquired had been held in trust by the United States until 2006, when they were converted to fee status. At the time of the July 1, 1996 claims filing deadline, Scott Ranch's claimed water rights had not yet been conveyed out of trust and were still part of the federally reserved Indian water right. Neither Scott Ranch nor its predecessors-in-interest could have timely filed claims for existing rights by the general adjudication deadline.

¶23 It is possible that other owners in circumstances similar to Scott Ranch's face this same predicament. Apart from the recently enacted provisions for filing exempt water rights claims prior to June 30, 2019, no mechanism exists for a party in Scott Ranch's position that has not already filed a statement of claim to include its existing *Walton* claims in the general statewide adjudication process. *See* 2017 Mont. Laws ch. 338, § 3. We emphasize that Scott Ranch and owners in similar circumstances should file their exempt claims by the June 30, 2019 deadline in order to avoid having their rights

10

subordinated "to all other water rights except those exempt rights for which a claim has not been filed." 2017 Mont. Laws ch. 338, § 3.[2]

**CONCLUSION**

¶24    We reverse the Water Court's order denying Scott Ranch's petition for adjudication and remand with instructions that it dismiss the petition without prejudice so that Scott Ranch may timely file an exempt claim with the Department under the revised § 85-2-222(2), MCA.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

---

[2]  We note Scott Ranch's indication that two of its forty-seven claims are non-exempt claims and that Scott Ranch will not be able to file these claims under the exempt claims filing process. Because these claims were still part of the federally reserved Indian water right at the time of the July 1, 1996 filing deadline, Scott Ranch and the amici represent that its predecessors could not have filed the claims before that date. This suggests a possible jurisdictional gap that is not developed in the briefing here and may warrant the Legislature's examination: the adjudication process for non-exempt *Walton* claims that were not separated from a federally reserved Indian water right until after July 1, 1996.