Chief Justice Mike McGrath delivered the Opinion of the Court.
**3 ¶ 1 This is an appeal from a Water Court order granting the United States Bureau of Land Management's (BLM) Motion for Summary Judgment. We affirm.
¶ 2 We restate the issues on appeal as follows:
1. Whether the Water Court correctly determined that the Kormans forfeited interests claimed for stockwater use in the Chevy Reservoir and Poker Reservoir claims 40M 75208-00 and 40M 75220-00.
2. Whether the Water Court erred when it determined that wildlife claims 40M 75209-00 and 40M 75221-00 were valid claims that did not expand the original appropriation.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 3 This Case involves the United States' water rights in two small reservoirs-the Chevy and Poker Reservoirs-on federal grazing lands within Montana Water Basin 40M. Water Court case 40M-230 is made up of forty-six stock and wildlife claims filed by the BLM on twenty-three reservoirs, all located on federal land. The claims were filed for each reservoir as multiple uses of the same historical appropriation, specifically for stock and wildlife uses. Appellants Ron and *74 Maxine **4 Korman (the Kormans) objected to all forty-six BLM claims.
¶ 4 The Kormans were assigned the Hammond Brothers' interests in grazing permits and range improvements on the Chevy and Poker Reservoirs in 1977. In 1960, the Hammond Brothers had filed a Range Improvement Application to construct the Chevy Reservoir on lands they occupied by permit. The BLM approved this application and a second application in 1966 to construct the Poker Reservoir. The reservoirs were constructed for the purpose of watering livestock on the federal range. However, the BLM also considered the impacts on wildlife, as reflected in 1973 job inspection records. In 1982, the BLM and Kormans executed a Cooperative Agreement for Range Improvements, which replaced the 1977 assignment. A provision within the Agreement states "Title to the said improvements with all labor and materials furnished by either party and used in the construction and maintenance thereof, shall be in the United States of America."
¶ 5 On August 11, 2015, the Water Court issued an Order Granting Partial Summary Judgment to the BLM on thirty-four of the forty-six claims and dismissed the Kormans' objections. The remaining claims were either dismissed or remanded to the water master for further proceedings. The Kormans appealed the Water Court's dismissal of those objections to this Court. In United States v. Korman , No. DA 16-0019, 2016 MT 351N, 386 Mont. 397, 2016 WL 7468097, 2016 Mont. LEXIS 1113 ( Korman I ), this Court affirmed the Water Court, citing BLM v. Barthelmess Ranch Corp. , 2016 MT 348, 386 Mont. 121, 386 P.3d 952, as authority for rejecting the Kormans' objections. In Barthelmess , we held that there is "no basis in fact or in law to assign ownership of the BLM [water-rights] claims" to holders of federal grazing permits who use federal reservoirs for livestock watering. Barthelmess , ¶ 40.
¶ 6 The Korman I case returned to the Water Court for further proceedings on the remaining open claims by the BLM. The Kormans withdrew two of their objections, leaving only claims to the Chevy and Poker Reservoirs at issue. On July 14, 2017, the BLM filed a motion for summary judgment on these claims. On December 18, 2017, the Water Court granted the BLM's motion for summary judgment, and denied the Kormans' objections. The Water Court held that any interest the Kormans had in water rights for stock use in the Chevy and Poker Reservoirs was forfeited pursuant to § 85-2-226, MCA, because they failed to file statements of claim. The Water Court held that because the BLM owns the reservoirs, it can claim ownership of the water rights diverted by the reservoirs. Further, the wildlife claims made by the BLM on the Chevy and Poker Reservoirs were held as valid **5 because the BLM had the ability to add a second purpose to the original appropriations, which did not expand its use.
¶ 7 On appeal, the Kormans no longer challenge the United States' ownership of the reservoirs and associated water rights for stock watering purposes. However, the Kormans contend that the Water Court erred (1) in stating that the Kormans forfeited the ability to assert their own water rights in the reservoirs, and (2) in holding that the United States possesses rights to store water in the reservoirs for wildlife purposes.
STANDARD OF REVIEW
¶ 8 "This Court applies the same standards of review to the Water Court as it does to an appeal from a district court." Heavirland v. State , 2013 MT 313, ¶ 15, 372 Mont. 300, 311 P.3d 813 (quoting Mont. Trout Unlimited v. Beaverhead Water Co., 2011 MT 151, ¶ 16, 361 Mont. 77, 255 P.3d 179 ). We review a district court's ruling on summary judgment de novo, applying the criteria of M. R. Civ. P. 56. RN & DB, LLC v. Stewart , 2015 MT 327, ¶ 13, 381 Mont. 429, 362 P.3d 61. A moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Feller v. First Interstate Bancsystem, Inc. , 2013 MT 90, ¶ 16, 369 Mont. 444, 299 P.3d 338 (quoting M. R. Civ. P. 56(c)(3) ).
*75 DISCUSSION
¶ 9 1. Whether the Water Court correctly determined that the Kormans forfeited interests claimed for stockwater use in the Chevy Reservoir and Poker Reservoir claims 40M 75208-00 and 40M 75220-00.
¶ 10 The 1973 Montana Water Use Act set statutory deadlines for the filing of water rights claims. Section 85-2-221, MCA. Owners of existing water rights were required to file claims with the Department of Natural Resources and Conservation (Department) by June 30, 1983. Section 85-2-221(1), MCA. The Legislature later extended this deadline to July 1, 1996. Section 85-2-221(3), MCA. The Act states that the "[D]epartment and the district courts may not accept any statements of claim" for existing water rights submitted after July 1, 1996. Section 85-2-221(4), MCA. The failure to file a claim creates a conclusive presumption of abandonment of that claim. Section 85-2-226, MCA. However, claims "for livestock and individual uses as opposed to municipal domestic uses based upon instream flow or **6 ground water sources ..." are exempt from the filing restrictions in § 85-2-221, MCA. Section 85-2-222(1), MCA. These exempt rights, however, must be filed with the Department by June 30, 2019. Section 85-2-222(2)(a), (7), MCA.
¶ 11 The Kormans argue that the Water Court erred when it held that the Kormans abandoned any interest they may have had for stock use from the Chevy and Poker Reservoirs. The Kormans allege that they have an exempt right and therefore have until June 30, 2019, to file their claim. Conversely, the BLM argues that the Kormans' alleged exempt right was not at issue in the Water Court nor in this Court because the Water Court only addressed rights to impound and use water in the reservoirs, which are not exempt rights.
¶ 12 The Water Court correctly held that the Kormans forfeited any stockwater rights claims associated with the Chevy and Poker Reservoirs. The Kormans have not filed a claim for stockwater rights with the Department, and the deadlines for the filling of water rights claims have passed. See § 85-2-221, MCA. As stated previously, failure to file claims pursuant to the deadlines in § 85-2-221, MCA, results in abandonment of those claims to existing water rights. Scott Ranch, LLC , 2017 MT 230, ¶ 14, 388 Mont. 509, 402 P.3d 1207.
¶ 13 The Kormans' argument that the stockwater rights at issue are exempt is misplaced. Section 85-2-222(1), MCA, specifically exempts certain uses "based upon instream flow or ground water sources ...." Section 85-2-222(1), MCA (emphasis added). The Water Court did not address such an exempt, instream water right. Rather, the Water Court addressed the Kormans' reservoir storage rights, which are not exempt. Indeed, the Kormans have until June 30, 2019, to file their exempt livestock rights, limited to "instream flow or groundwater sources...." Section 85-2-222(1), MCA.
¶ 14 Further, the BLM's rights cannot be assigned to the Kormans. Given this Court's ruling in Korman I and Barthelmess , the Kormans do not and cannot contend that they have a right to be assigned the United States' water rights claims in the reservoirs. See Barthelmess , ¶ 40. Any claims that the Kormans could have filed or might yet file under § 85-2-222(2), MCA, were not before the Water Court and are not before this Court.
¶ 15 2. Whether the Water Court erred when it determined that wildlife claims 40M 75209-00 and 40M 75221-00 were valid claims that did not expand the original appropriation.
¶ 16 In 1934, Congress enacted the Taylor Grazing Act, 43 U.S.C. § 315 (Act), which in part, authorized the Secretary of the Interior **7 (Secretary) to establish and add to grazing districts for the regulation of rangelands. 43 U.S.C. § 315 ; Pub. Lands Council v. Babbitt , 529 U.S. 728, 733, 120 S.Ct. 1815, 1819, 146 L.Ed.2d 753 (2000). The Act directed the Secretary to "preserve the land and its resources from destruction or unnecessary injury, to provide for the orderly use, improvement, and development of" rangeland. 43 U.S.C. § 315a. In order to do so, the Secretary was authorized to grant permits for grazing use within grazing districts *76 to "bona fide settlers, residents, and other [eligible] stock owners," subject to rules and regulations that the Secretary may establish. 43 U.S.C. § 315b.
¶ 17 In the Act, Congress also directed the Secretary to provide "suitable rules and regulations" for cooperating with state and local officials in the "conservation [and] propagation of wild life" within grazing districts. 43 U.S.C. § 315h. In the Fish and Wildlife Coordination Act, also enacted in 1934, Congress mandated, with respect to "any waters ... impounded by the United States," that consideration be given to "securing a greater biological use of the waters not inconsistent with their primary use...." Act of Mar. 10, 1934, ch. 55, § 3(a), 48 Stat. 401, 401 (codified as amended at 16 U.S.C. § 661 ). The duty of the Secretary to manage public lands and waters for multiple uses, including fish and wildlife habitat, remains in current law. See 43 U.S.C. § 1701(a)(8) (added by the Federal Land Policy Management Act of 1976). Consistent with theses statutes, the Secretary's initial post-Act regulations for grazing districts mandated that a sufficient carrying capacity of Federal range be reserved for the maintenance of a reasonable number of wild game animals, to use the range in common with livestock grazing in the district. See 7 Fed. Reg. 7685, 7686-87 (Sept. 29, 1942) (adding 43 C.F.R. § 501.5(b) ).
¶ 18 Under Montana law, a holder of a water right may change the use of such right within the original priority, so long as the change does not injure or increase the burden on other users. Teton Coop Canal Co. v. Teton Coop Reservoir Co. , 2018 MT 20, ¶ 32, 390 Mont. 210, 412 P.3d 1 (citing § 89-803, RCM (1947) (repealed 1973) ); In re Eldorado Coop Canal Co. , 2016 MT 94, ¶ 37, 383 Mont. 205, 369 P.3d 1034 (citing Quigley v. McIntosh , 110 Mont. 495, 505, 103 P.2d 1067, 1072 (1940) ).
¶ 19 The Kormans argue that the Water Court erred by expanding the beneficial use of the original appropriation to include wildlife claims on the Chevy and Poker Reservoirs. The Kormans further allege that because they have not yet filed claims for exempt water rights, the volumes claimed by the BLM for wildlife use are subject to challenge. Conversely, the BLM argues that even if the Water Court had **8 expanded the beneficial use of the Chevy and Poker Reservoirs, doing so did not injure other users.
¶ 20 Although wildlife claims were not listed as a purpose in the original Range Improvement Permit application submitted by the Hammond Brothers in the 1960s, such an application was for a grazing permit, not water rights. In fact, at the time of the impoundments-prior to 1973-no state law permit was required to obtain a water right. Barthelmess , ¶ 11. Rather, "an appropriator in Montana could secure a water right simply by putting the water to a beneficial use." Barthelmess , ¶ 11.
¶ 21 Importantly, the permits granted by the BLM allowed the Hammond Brothers to construct the Chevy and Poker Reservoirs at design capacities larger than required for livestock use. The BLM did so in accordance with provisions of the Act and regulations requiring the BLM to consider the needs of wildlife in addition to livestock. See 43 U.S.C. § 315h ; 7 Fed. Reg. at 7686-87 (adding 43 C.F.R. § 501.5(b) ); see also 43 U.S.C. § 1701(a)(8). Additionally, as this Court held in Korman I , when the United States or its permittees impounded and appropriated water to improve the federal range, the United States acquired water rights associated with all beneficial uses of the impounded water, including wildlife use. Korman I , ¶ 5 ; see also In re Adjudication of Water Rights in Basin 41I , 2002 MT 216, ¶¶ 16, 40, 311 Mont. 327, 55 P.3d 396 (holding that wildlife use is a valid purpose for a historical water right). Here, the impoundment of water for wildlife was not an expansion of use. The Water Court was correct when it granted the BLM's motion for summary judgment on claims 40M 75209-00 and 40M 75221-00.
CONCLUSION
¶ 22 The Water Court correctly determined that the BLM is the owner of stock claims 40M 75208-00 and 40M 75220-00 and affirmed claims 40M 75209-00 and 40M 75221-00 for wildlife use.
¶ 23 Affirmed.
*77 We Concur:
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.
INGRID GUSTAFSON, J.