**FILED**

06/21/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0661

DA 21-0661

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 120

ROBERT N. HURD AND CAROL L. HURD,

Claimants and Appellants.

APPEAL FROM:    Montana Water Court, Case No. 43Q-6006-A-2021
Honorable Russ McElyea, Chief Water Judge

COUNSEL OF RECORD:

For Appellants:

Margaret C. Weamer, Nicholas VandenBos, Tarlow Stonecipher
Weamer & Kelly, PLLC, Bozeman, Montana

Submitted on Briefs:  June 1, 2022

Decided:  June 21, 2022

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Robert and Carol Hurd appeal a December 1, 2021 order by the Water Court. The order denied the Hurds' motion to amend their water right for a groundwater well, finding that the untimeliness of the motion meant that the Water Court lacked jurisdiction to adjudicate the requested modification.

¶2     We restate the issue on appeal as follows:

*Did the Water Court err in concluding that the Hurds' failure to timely file a claim for their exempt groundwater right precluded them from invoking the Water Court's jurisdiction?*

¶3     We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     The Hurds have rights in a groundwater well in Yellowstone County for stockwater or individual use, water right 43Q 30022461. The well dates to 1950, and the Hurds acquired the property and the water right in 1983.

¶5     In 1963, the Hurds' predecessors-in-interest filed a "Declaration of Vested Groundwater Rights" regarding the well and its use for livestock and domestic purposes. Under the law in effect at the time, the Montana Groundwater Code of 1961, beneficial uses of groundwater became recognized as water rights, and filing such a declaration served as prima facie evidence of any such right. Section 89-2913(h), RCM (1961).

¶6     The 1973 Water Use Act substantially revised Montana's system for claiming and adjudication of water rights. This law required that water rights holders newly file a statement of claim no later than June 30, 1983, or else forfeit their right through

presumptive abandonment (the deadline was later extended to 1996). Section 85-2-221(1), MCA; *In re Yellowstone River*, 253 Mont. 167, 832 P.2d 1210 (1992). These timely filed claims filter into a basin-by-basin adjudication of water rights and priorities across the state. Significant to this matter, certain types of water rights were exempt from the requirement of filing a new statement of claim. These "exempt rights" included groundwater used for livestock and domestic purposes, like the Hurds' well. Section 85-2-222(1), MCA; 1979 Mont. Laws ch. 697, § 11.

¶7     The Hurds and their predecessors did not file a statement of claim for the water right at issue here. In 2006, the Hurds did file a Form 627, a "Notice of Water Right," with the Department of Natural Resources and Conservation (DNRC). An "important note" included at the top of this form described how stock and domestic groundwater rights were exempt from the claim filing requirement and described the purpose of the form as follows:

> A person who claims to have a water right that is exempt may file this form for the purpose of receiving notice from the Department of permit applications, change authorizations, or reservations that may affect the owner's water right. Filing this notice does not relieve a person of the responsibility of establishing the existence of a water right. Acceptance of this form by the Department does not constitute a recognition by the State of Montana that the right is a valid existing water right.

¶8     Thus, the utility of Form 627 is that it provides people with exempt rights in groundwater, like the Hurds, notice of the proceedings in their basin even if they lack one of the duly-filed statements of claim pending in that basin's adjudication. The form is not a substitute for a statement of claim but provides a means for holders of exempt rights to receive relevant information from DNRC.

3

¶9      In 2017, the Montana Legislature again updated certain water rights statutes, establishing a June 30, 2019 deadline for exempt water rights holders to file a statement of claim.  Section 85-2-222(2), MCA; 2017 Mont. Laws ch. 338, § 3.  The 2017 amendments provided that "the department may not accept any statements of claim submitted or postmarked after June 30, 2019. The department shall notify a person who files a claim after June 30, 2019, that the person's claim will not be accepted."  Section 85-2-222(7), MCA.  Following the passage of the 2017 statute, DNRC mailed out a notice to all Montana property owners, explaining the opportunity to file for exempt rights and describing the 2019 deadline. The notice made explicitly clear that rightsholders like the Hurds, who had filed a Form 627, did not have a statement of claim: "The 627 was only for noticing purposes and isn't considered a valid water right filing.  If you have one of these filings you may consider filing an Exempt Statement of Claim at this time."

¶10     Unlike the deadline for non-exempt rights from the 1973 law, a failure to meet the 2019 deadline does not result in forfeiture of an exempt right, but that right is subordinate in priority to all the rights for which formal claims have been timely filed.  Section 85-2-222(5), MCA.  Thus, the new law made it necessary to file a statement of claim for exempt rights to secure their priority relative to any other filed claims.  The 2019 deadline passed, and the Hurds did not file a statement of claim for their exempt water right.

¶11     In 2021, the Hurds filed a motion in the Water Court citing § 85-2-233(6), MCA, which describes the process for a "motion to amend a statement of claim" after a temporary preliminary decree or preliminary decree has been issued for a basin, as is the case in Basin 43Q encompassing the Hurds' property.  What the Hurds requested was essentially to

4

transform the DNRC filing describing their "exempt notice" status (from the Form 627) into a claim-backed right with an enforceable 1950 priority date, as if they had filed a statement of claim. A Water Master at the court prepared a report regarding their request and recommended that the motion be denied. The Water Court issued an order on December 1, 2021, adopting the Water Master's report. The Water Court concluded that it had no jurisdiction to modify a statement of claim for the Hurds because the Hurds had no properly filed claim to amend.

¶12 The Hurds appeal. No response brief was filed.

## STANDARD OF REVIEW

¶13 When the Water Court issues an order reviewing the factual and legal conclusions in a Water Master's report, we review the Water Court's order de novo, "to determine whether it correctly applied the clear error standard of review to the Master's findings of fact and whether its conclusions of law were correct." *Skelton Ranch, Inc. v. Pondera Cty. Canal & Reservoir Co.*, 2014 MT 167, ¶¶ 25-26, 375 Mont. 327, 328 P.3d 644. We also review a court's conclusions as to its jurisdiction de novo. *Scott Ranch, LLC*, 2017 MT 230, ¶ 10, 388 Mont. 509, 402 P.3d 1207.

## DISCUSSION

¶14 *Did the Water Court err in concluding that the Hurds' failure to timely file a claim for their exempt groundwater right precluded them from invoking the Water Court's jurisdiction?*

¶15 The crux of the issue underlying the Hurds' appeal is the distinction between a "water right" and a "statement of claim" that the Water Court can adjudicate. The Hurds conflate the two, but they are distinct.

5

¶16    Water rights like those for the groundwater in the Hurds' 1950 well vested upon beneficial use and persist as long as the beneficial use does. *79 Ranch v. Pitsch*, 204 Mont. 426, 431, 666 P.2d 215, 217 (1983).  Under the 1973 statutory scheme, their right is an "exempt right" because it is a right for livestock or individual use that was not forfeited if it lacked a formal statement of claim.

¶17    A statement of claim is a different instrument—born of our statutory scheme since 1973—that describes a water right, serves as prima facie evidence of that right, and entitles the holder of that right to participation in the Water Court's adjudicative processes.  Exempt rights like the Hurds' do not need a statement of claim in order to exist, but as noted, under the 2017 amendments to the Water Use Act, they do need a statement of claim in order to avoid being subordinate to the pertinent water rights that do have a filed claim.  Section 85-2-222(5), MCA.  Without a valid, timely filed statement of claim, the Hurds still have a water right, but the priority date of that right is subordinate to other rights that do have a statement of claim.

¶18    The Hurds filed a motion in the Water Court pursuant to a statute regarding how to "amend a statement of claim."  Section 85-2-233(6), MCA.  Although the Water Court's jurisdiction generally covers "all matters relating to the determination of existing water rights,"[1] the Hurds have invoked the Water Court's jurisdiction to amend something they do not have.  If the Hurds had filed a statement of claim any time between 1983 and 2019, the filing would have put other water users in their basin on notice of their groundwater

---

[1] *See* § 3-7-224(2), MCA.

6

right and brought them within the ambit of the Water Court's basin-wide adjudication. But after the Hurds failed to file such a claim before the statutory deadline created in 2017 passed, they lost their opportunity to invoke the Water Court's jurisdiction to adjudicate their priority as if they had filed one. The Hurds repeatedly refer to their right, 43Q 30022461, for which DNRC keeps an "exempt notice" file, as "Claim No." 43Q 30022461, but this is a misleading and inaccurate label. The Hurds never submitted the filing that would transform this right into a *claim* for the purposes of adjudicating the basin-wide decree. They did not file the statement-of-claim form provided by DNRC, nor did they pay the filing fees required by § 85-2-225, MCA. Section 85-2-222(5)(b), MCA, now governs the priority of their right, subordinating it to those that do carry statements of claim. The Water Court cannot ignore this law to enforce a priority date for the Hurds as if they had followed the claims procedure when they have not.

¶19 In 2017, we issued a decision reflecting a similar standard for *non-exempt* rightsholders who missed the statutory deadline for filing a statement of claim. *See Scott Ranch*, ¶ 20. That case involved a rightsholder with both exempt and non-exempt rights. We noted the then-upcoming 2019 deadline to file statements of claim for exempt rights and encouraged the claimant, Scott Ranch, as well as others similarly situated, to timely file their claims to avoid subordinating them to other rights. Regarding Scott Ranch's non-exempt rights, however, we held that the Water Court "lacked jurisdiction to adjudicate Scott Ranch's claims" because the 1996 deadline for filing these statements of claim had already passed. *Scott Ranch*, ¶ 20. We noted that the law creating the deadline

7

stated explicitly that DNRC "and the district courts may not accept any statements of claim" after the deadline. *Scott Ranch*, ¶ 14 (citing § 85-2-221(4), MCA).

¶20 The Hurds point out that the law creating the 2019 deadline for exempt rights lacks the "and the district courts" language cited above. It states only that "[t]he [DNRC] may not accept any statements of claim submitted or postmarked after June 30, 2019." Section 85-2-222(7), MCA. The Hurds argue that this distinction should change our jurisdictional analysis, but it does not. Regardless, the Hurds did not follow the process required by law to submit a claim. *See* § 85-2-222, MCA.

¶21 The Hurds essentially acknowledged their understanding of their exempt status when they filed the notice form in 2006. This form made clear that its purpose was to provide them notice of water rights activity but was not the equivalent of a statement of claim for their right, and their use of the form makes apparent that the Hurds understood that they lacked a statement of claim. We cannot allow the Hurds to bootstrap a statement of claim into existence out of their 1963 declaration because, as the Water Court pointed out in its order, this would contradict the Water Use Act and undermine the structured adjudication process for which it was passed. It would create a mechanism for an untold number of other rights holders who neglected the explicit statutory requirements but retained some unconsidered pre-1973 evidence to belatedly insert themselves into the adjudication process. All the rightsholders who duly followed the statutory rules and provided notice of their rights, through timely filed statements of claim, would suddenly lack the security and certainty that the claim-filing process was enacted to create.

**CONCLUSION**

¶22    We conclude that the Water Court was correct to deny the Hurds' motion for lack of jurisdiction.  The December 1, 2021 order by the Water Court is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR